**HRH CONSTRUCTION CORPORATION**

v.

**The UNITED STATES.**

**No. 77–69.**

United States Court of Claims.
July 15, 1970.

Sebert H. Keiffer, Washington, D. C., attorney of record, for plaintiff; Vallario & Keiffer, Washington, D. C., of counsel.

Russell W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

### PER CURIAM.

This case was referred to Trial Commissioner Harry E. Wood with directions to prepare and file his opinion on the issues of plaintiff's motion and defendant's cross-motion for summary judgment under the order of reference and Rule 166(c). The commissioner has done so in an opinion and report filed on January 12, 1970, wherein such facts as are necessary to the opinion are set forth. Plaintiff filed a request that the court review the commissioner's report, defendant urged that it be adopted by the court and the case has been submitted to the court on oral argument of counsel and the briefs of the parties.

Since the court agrees with the opinion and recommended conclusion of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover, plaintiff's motion for summary judgment is denied, defendant's cross-motion is granted and plaintiff's petition is dismissed.

### OPINION OF COMMISSIONER

WOOD, Commissioner: This case, arising out of a 1964 contract for the construction of an "NCO HIGH RISE APARTMENT," is before the court on cross-motions for summary judgment [1] for review, under Wunderlich Act [2] standards, of a decision by the Armed Services Board of Contract Appeals denying plaintiff's claim to an equitable adjustment for an asserted change.[3]

Plaintiff's position was that by requiring the painting of certain interior surfaces of the apartment building, defendant constructively changed the contract. After a hearing limited to liability, the Board held that "The contract as awarded did require the disputed painting work, and the direction to perform it was not a change."

For the reasons appearing below, it is concluded that plaintiff is not entitled to recover.

The facts are not in any dispute. The contract in suit, executed June 30, 1964, called for the construction of a twelve story, 120 unit, "NCO HIGH RISE APARTMENT" at Fort Myer, Virginia, at a fixed price of $1,841,420.00. The contractor [4] agreed to furnish all la-

---

1. Pursuant to Rule 98(b) (1) [now Rule 165(b) (1)] plaintiff was ordered to file a motion for summary judgment and supporting brief on or before September 29, 1969. On September 18, 1969, plaintiff filed a document captioned "Petitioner's Motion for Summary Judgment and Petitioner's Brief in Support of Its Motion for Summary Judgment." While this document contains no formal motion for summary judgment, defendant has raised

no objection in this connection and the case is treated as though such a motion had been filed. See Rule 1(a).

2. 68 Stat. 81, 41 U.S.C. §§ 321, 322 (1964).

3. ASBCA No. 12059, 67–2 BCA ¶ 6658.

4. While the administrative record seems to show that the contract was between defendant (acting through the Army Corps of Engineers), and HRH Washington, Inc., the Armed Services Board of Con-

bor, materials and equipment and to perform the work required in strict accordance with the contract specifications, schedules, and drawings. The painting work was subcontracted to Clifton D. Mayhew, Inc., and plaintiff alleges that it "presents this Petition on behalf of said subcontractor."

In early 1966, during the latter stages of construction, a dispute arose as to painting requirements under the contract. Plaintiff took the position that the contract did not require the painting of certain surfaces within specified interior areas of the building, *viz:*

(1) gypsum board walls in corridors and typical floor elevator lobbies;

(2) "Exposed concrete" ceilings in stairwells;

(3) "Exposed concrete" ceiling in the rubbish vestibule;

(4) gypsum board walls, "Exposed concrete masonry unit" walls, and "Exposed concrete" ceilings in non-dwelling areas;

(5) "Exposed concrete masonry unit" walls in the mechanical equipment room and the trash room; and

(6) certain mechanical pipe and equipment.

Defendant, insisting that painting of the disputed surfaces was contractually required, directed such painting, and the work was performed under protest. Claims for compensation for the asserted change were then made, denied by the contracting officer, and unsuccessfully appealed to the Armed Services Board of Contract Appeals.

General Provision No. 2 of the contract provided, *inter alia,* that anything mentioned in the specifications and not shown on the drawings, or *vice versa,* "shall be of like effect as if shown or mentioned in both", and that, in case of difference between drawings and specifications, the latter should govern. The same provision directed, "In case of dis-

crepancy * * * in the drawings, or in the specifications, * * * " that the matter promptly be submitted to the contracting officer for a written determination, and warned that any adjustment made without such a determination would be at the contractor's own risk and expense.

Other relevant contractual provisions are set forth in an Appendix to this opinion. Among them are portions of Part III ("TECHNICAL PROVISIONS"), Section 20 of the specifications, "PAINTING, GENERAL", containing general procedures for surface cleaning and painting. Section 20–09, "SURFACES TO BE PAINTED", stated that, "Except as specified under SURFACES NOT TO BE PAINTED, the surfaces listed in the painting schedule below shall receive the surface preparation, paints, and the number of coats prescribed." Section 20–10, "SURFACES NOT TO BE PAINTED", contained a single entry: "Prefinished elevator doors and frames." The painting schedule, which followed Section 20–11 (not here relevant), included entries for both interior and exterior surfaces, tabulated under headings for "Surface", "Surface preparation and pretreatment", "1st Coat", "2d Coat", and "3d Coat".

The controversy at bar, involving certain interior surfaces only, stems from Sheet 2 of the contract drawings. Sheet 2 contained, *inter alia,* a tabulated Finish Schedule listing ten space names (designated by "mark" numbers), each with entries under five headings: "Floor", "Base", "Wall", "Cealing", and "Remarks". Under the columns entitled "Wall" and "Ceiling", and opposite five of the ten "space names", the word "paint" (or "painted", or "ditto" beneath such words) appeared and these surfaces manifestly had to be painted. Opposite the remaining five "space names", however, the word "paint" (or "painted" or "ditto") was omitted from the "Wall" or the "Ceiling" entry, or

tract Appeals denominated HRH Construction Corporation "the appellant", and defendant here admits that it "en-

tered into a contract with plaintiff * *." Petition, par. 2; Answer, par. 2.

from both. Plaintiff's claim is bottomed on the omission.

Plaintiff advances two principal lines of argument, which are here stated in reverse order. One is that General Provision No. 2 has no relevance, because there was no "difference" between the specifications and the Finish Schedule; that the precedence contractually accorded the specifications over the Finish Schedule *in case of conflict* is thus of no moment; and that it was under no duty to submit the matter to the contracting officer for determination, such action being a requisite only "In case of discrepancy".

The other line of argument, closely related, is that plaintiff logically concluded, from the specifications, that some surfaces were not to be painted; that to determine where those surfaces not to be painted were located, resort to the Finish Schedule was necessary and reasonable; that plaintiff's conclusion, from the specifications *and* Finish Schedule, that the areas in dispute did not require painting, was reasonable; and that, under familiar doctrine,[5] plaintiff's construction of the contractual requirements should be adopted.

Defendant's main position is that taken by the Armed Services Board of Contract Appeals: that the contract specifications clearly called for painting of the disputed surfaces. According to defendant, the failure of the Finish Schedule to direct such painting is immaterial, since, under General Provision No. 2, the specifications take precedence over the Finish Schedule in case of conflict. Defendant also asserts, however, that plaintiff's construction of the contract was unreasonable; and that plaintiff (a) was in any event under a duty to obtain from the contracting officer a confirmation of its interpretation of the painting requirements of the contract, and (b) having failed to meet this duty, cannot rely on the principle that con-

tract ambiguities are construed against the drafter. *Cf.* Beacon Constr. Co. of Mass. v. United States, 314 F.2d 501, 504, 161 Ct.Cl. 1, 6 (1963); J. A. Jones Constr. Co. v. United States, 395 F.2d 783, 790, 184 Ct.Cl. 1, 13 (1968).

In denying plaintiff's claims, the Armed Services Board of Contract Appeals concluded that the "clear and single meaning" of the painting specifications was that the disputed surfaces were to be painted. In the Board's (and defendant's) view, the phrase "unless otherwise specified" in the painting schedule, on which plaintiff relied (and relies), simply meant that surfaces "otherwise specified" were to receive a different type of paint or number of coats than the surface listed with the qualification. Thus, "Interior gypsum goard [sic], unless otherwise specified" was to receive a stated paint treatment, while "Interior gypsum board in laundry areas" was to receive a different, also stated, paint treatment. Similar distinctions were made between the painting of "Interior concrete masonry units" generally and "Interior concrete-masonry-unit walls in laundry areas", and between the painting of "Interior ferrous surfaces" generally and "Ferrous surfaces of mechanical equipment and machinery * * *."

The Board also noted that the specifications directed painting of the surfaces, and that the Finish Schedule did not state that such surfaces were not to be painted. Accordingly, said the Board, there was "a case where something is mentioned in the specifications and not shown on the drawings, and * * * thus of like effect as if shown or mentioned in both." The Board further held that even if omission of the word "paint" in the Finish Schedule could be construed to reflect a difference between the drawings and the specifications, the contract provided that the specifications would govern, and that, in "the present

---

5. Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390, 418 (1947); L. Rosenman Corp. v. United States, 390 F.2d 711, 714, 182 Ct.Cl. 586, 591 (1968); WPC Enterprises, Inc. v. United States, 323 F.2d 874, 876, 163 Ct.Cl. 1, 6 (1963).

circumstances * * * the specification is the governing call-out of all specified and required painting work, and the finish schedule is not incorporated therein or necessarily a reference source for any further information."

The parties are agreed that this dispute, turning as it does on an interpretation of contract provisions, involves a question of law which the court is free to answer independently of the Board's decision. Paschen Contractors, Inc. v. United States, 418 F.2d 1360, 190 Ct.Cl. 177 (1969); N. Fiorito Co. v. United States, 416 F.2d 1284, 189 Ct.Cl. 215 (1969); Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 974, 169 Ct.Cl. 384, 386 (1965).

Neither party's position herein satisfactorily resolves all questions. There is no explanation from defendant as to why certain entries in the Finish Schedule directed the painting of walls and ceilings, while others omitted any such direction. There is also silence as to why the Finish Schedule was amended, prior to contract award, by adding the word "painted" to one of the ten "marks", under the ceilings column. And, defendant seems to regard the Finish Schedule as superfluous; it argues, simply and bluntly, that the "Painting Schedule in the Specifications controlled the Finish Schedule * * *." *Cf.* Morrison Knudsen Co. v. United States, 397 F.2d 826, 842, 184 Ct.Cl. 661, 687 (1968).

On the other hand, plaintiff's focus is on the Finish Schedule; its contention that the painting schedule was but general in nature, prescribing only painting treatment for *surfaces* required to receive paint as shown by the Finish Schedule, with the Finish Schedule showing the given *areas* to receive paint, is plainly untenable. *Cf.* Southern Constr. Co. v. United States, 364 F.2d

439, 453, 176 Ct.Cl. 1339, 1362 (1966); Pulis Builders, Inc., ASBCA No. 10953, 66–2 BCA ¶ 6059 (1966). Plaintiff proffers no reason why those surfaces it contends were to remain unpainted were not listed under "SURFACES NOT TO BE PAINTED" in the specifications.

■ Plaintiff's proposition that a contractor's interpretation of ambiguous contract provisions will be adopted if reasonable is, in the abstract, an ancient and valid one. See Paschen Contractors, Inc. v. United States, *supra*; J. A. Jones Constr. Co. v. United States, *supra*, 395 F.2d at 789–790, 184 Ct.Cl. at 11–13 (1968). That proposition, however, does not control the disposition of this concrete case. J. A. Jones Constr. Co. v. United States, *supra*; Unicon Management Corp. v. United States, 375 F.2d 804, 806, 179 Ct.Cl. 534, 538 (1967).

■ "What constitutes a patent and glaring omission [in a contract] cannot, of course, be defined generally but only on an *ad hoc* basis by looking to what a reasonable man would find to be patent and glaring." L. Rosenman Corp. v. United States, 390 F.2d 711, 713, 182 Ct.Cl. 586, 590 (1968). Where a contract contains such an omission, however, "the burden is on a contractor to seek clarification * * *." *Ibid*; Unicon Management Corp. v. United States, *supra;* Beacon Constr. Co. v. United States, *supra*, 314 F.2d at 504, 161 Ct.Cl. at 6–7 (1963).

Plaintiff's contract specifications explicitly provided that, "Except as specified under SURFACES NOT TO BE PAINTED, the surfaces listed in the painting schedule below shall receive the surface preparation, paints, and the number of coats prescribed. * * *" Each of the interior surfaces involved in this suit—gypsum board, concrete, concrete masonry units,[6] and ferrous surfaces—was listed in the painting sched-

---

6. Plaintiff's reliance on the terms "Exposed concrete" and "Exposed concrete masonry units" in the Finish Schedule as reflecting clear intent to leave concrete and concrete masonry units unpainted is misplaced. The Finish Schedule itself refers at one place to painted "Exposed concrete masonry unit", and Technical Provision 2–25a states that "Painting of exposed-to-view concrete surfaces is specified under the PAINTING section of these specifications."

ule, and not mentioned under "SUR-FACES NOT TO BE PAINTED". In contrast, the Finish Schedule in some instances specifically directed that certain walls and ceilings made of the disputed surfaces be painted, but in others named the disputed surfaces while omitting the direction to paint them.

Plaintiff strenuously argues that the phrase "unless otherwise specified", which appears at places in the painting schedule to qualify surfaces listed (see Appendix), necessitates and justifies resort to the Finish Schedule to determine which surfaces were not to be painted. There are insurmountable difficulties with the argument. In each instance where the painting schedule contains the phrase relied upon, there appears in immediate conjunction therewith an alternative treatment for the surface so qualified. None of the disputed surfaces appears under "SURFACES NOT TO BE PAINTED", a fact to which plaintiff pays little or no heed. Plaintiff's distinction between surfaces and areas is, as noted above, untenable. And, there is no sound basis for elevating an omission in the Finish Schedule over explicit directions to paint (and not to paint) in the painting schedule.

In short, the claimed harmony and unity of the two schedules, in these circumstances, plainly is nonexistent. The absence from the Finish Schedule of directions to paint the disputed surfaces should have put plaintiff on notice as to the existence of a discrepancy between the Finish Schedule, as plaintiff construes it, and the painting schedule. Reading the contract as a whole, as one must, the omission was not obscure or subtle but "obvious." J. A. Jones Constr. Co. v. United States, supra; Unicon Management Corp. v. United States, supra.

■ Where a potential contractor is presented with a contract containing terms such as General Provision No. 2, and an obvious omission, inconsistency, or discrepancy of significance, "he must consult the Government's representatives if he intends to bridge the crevasse in

his own favor." Beacon Constr. Co. v. United States, supra; see also J. A. Jones Constr. Co. v. United States, supra, and cases there cited.

■ Had the obvious omission timely been brought to defendant's attention, the dispute now in litigation would have come to light, and would have been appropriately resolved prior to the submission of bids. Having bridged the gap in its own favor without consulting the contracting officer prior to bidding, however, plaintiff is not entitled to recover here.

Although there is no showing that plaintiff knew (nor that it did not know) of the discrepancy prior to submitting its bid, cf. Unicon Management Corp. v. United States, supra, this is not a governing consideration. "It is the existence and type of the discrepancy, not necessarily the contractor's actual knowledge of it, that imposes a burden of inquiry on the contractor in the face of a provision like [General Provision No. 2.]" J. A. Jones Constr. Co. v. United States, supra, 395 F.2d at 790, 184 Ct.Cl. at 13, and cases there cited.

This disposition of the litigation renders unnecessary scrutiny of the other contentions of the parties.

## CONCLUSION

Therefore plaintiff's motion for summary judgment is denied, defendant's cross-motion is granted, and plaintiff's petition is dismissed.

## APPENDIX
*Excerpts from Section 20—PAINTING, GENERAL and Sheet 2—FINISH SCHEDULE*

### SECTION 20
### PAINTING, GENERAL

20–01. SCOPE: This section covers the surface cleaning and painting that is not specified in other sections.

\* \* \* \* \* \*

20–09. SURFACES TO BE PAINTED:

*a. General:* Except as specified under SURFACES NOT TO BE PAINT-

ED, the surfaces listed in the painting schedule below shall receive the surface preparation, paints, and the number of coats prescribed. Piping shall not be painted until the piping has been tested and approved. Explanatory information for use with the painting schedule is as follows:

(1) *Surfaces* of fabricated and assembled items that are finish-painted by the manufacturer, or specified to be finish-painted under other sections of the specification, are exempted from the following schedule requirements for surface preparation and painting. Shop-primed items shall receive surface preparation and finish painting as required by this section.

(2) *Colors and tints,* including shades of stain, shall match the respective color specimens selected by the Contracting Officer. Colors and tints shall conform to Federal Standard No. 595. Stains shall conform in shade to manufacturer's standard color. Undercoats shall vary slightly from the color of the next coat.

(3) *Method of surface preparation* and pretreatment shown in the schedule is for identification purposes only. Cleaning and pretreatment shown in the schedule is for identification purposes only. Cleaning and pretreatment of surfaces prior to painting shall be accomplished in accordance with the detailed requirements hereinbefore described.

*b. Painting schedule:* See pages 9-12:

20-10. SURFACES NOT TO BE PAINTED: The following listed items will not require painting:

Prefinished elevator doors and frames.

\*    \*    \*    \*    \*    \*

### [Painting schedule]

| Surface | Surface preparation and pretreatment | 1st coat | 2nd coat | 3rd coat |
|---|---|---|---|---|
| Interior concrete masonry units, concrete (except concrete floors), structural clay tile, gypsum board, unless otherwise specified. | As previously specified for each type of surface. | TT-P-29 TT-P-29 | TT-P-29 TT-P-30 | None. TT-P-30 |
| Interior gypsum board, unless otherwise specified. | As previously specified. | TT-P-650 TT-P-650 | TT-P-29 TT-P-30 | None. TT-P-30 |
| Interior concrete-masonry-unit walls in laundry areas. | Remove foreign matter, loose particles, and efflorescence. | Cement-latex filler. | TT-P-29 | TT-E-543 4th coat TT-E-506 |
| Interior gypsum board in laundry areas. | As previously specified. | TT-P-650 | TT-E-543 | TT-E-506 |
| Interior ferrous surfaces, unless otherwise specified. | As previously specified. | TT-P-30 TT-E-543 TT-E-543 Aluminum paint. | TT-P-30 TT-E-508 TT-E-506 Aluminum paint. | None. None. None. None. |
| Ferrous surfaces of mechanical equipment and machinery other than machined surfaces. | As previously specified. | TT-E-489, Class A. | TT-E-489, Class A. | None. |

[A 2575]

FINISH SCHEDULE

| MARK | SPACE NAME | *** | WALL | CEILING | *** |
|------|-----------|-----|------|---------|-----|
| 1 | LR., DA., KIT., F., BEDROOMS, CLOSETS AND STORAGE | | GYP. BD.— PAINTED | TEXTURED PAINT | |
| 2 | BATHS | | DO. | GYP. BD. ON MET. SUSP. SYSTEM— PAINTED | |
| 3 | CORRIDOR AND TYPICAL FLR. ELEV. LOBBY | | GYP. BD. | TEXTURED PAINT | |
| 4 | STAIRS | | EXPOSED CONC. MAS. UNIT— PAINTED | EXPOSED CONCRETE | |
| 5 | RUBBISH VESTIBULE | | DO. | DO. | |
| 6 | ELEVATOR LOBBY AT FIRST FLOOR | | GYP. BD. PAINTED | TEXTURED PAINT | |
| 7 | LAUNDRY AND PLAYROOM | | GYP. BD. AND EXPOSED CONC. MAS. UNIT— PAINTED | DO. | |
| 8 | BASEMENT CORRIDOR | | GYP. BD. PAINTED | DO. | |
| 9 | NON-DWELLING AREAS | | GYP. BD. AND EXPOSED CONC. MAS. UNIT | EXPOSED CONC. | |
| 10 | MECH. EQUIP. ROOM AND TRASH ROOM | | EXPOSED CONCRETE MASONRY UNIT | GYP. BD. PAINTED* | |

*The word "PAINTED" was added by amendment to the contract prior to the submission of bids.
[A 2576]