**MERANDO, INC.**

v.

**The UNITED STATES.**

No. 779–71.

United States Court of Claims.
March 16, 1973.

Maurice A. Guervitz, Washington, D. C., attorney of record for plaintiff.

Francis H. Clabaugh, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

KUNZIG, Judge.

This is a contract action wherein this court, by cross motions for summary

judgment, has been asked to review two decisions of the Armed Services Board of Contract Appeals (the Board) [1] in accordance with standards established by the Wunderlich Act, 41 U.S.C. §§ 321–22 (1970).

In issue is the reasonableness of the contractor's conduct regarding items to be painted when faced with discrepancies between Painting Schedules and Finish Schedules. Only the question of entitlement is presently before this court, the parties having stipulated to leave the question of quantum for further proceedings.

■ We hold that the Board's conclusion, that Painting Schedules alone designate areas to be painted, is correct as a matter of law, notwithstanding inconsistencies with the Finish Schedules. Accordingly, plaintiff's petition must be dismissed.

This case encompasses two separate contracts. The first, No. DA44–110–ENG–6020, entered into on April 20, 1966, was for construction at a barracks complex at Fort Myer, Virginia. The second, No. DACA31–67–C–0055, entered into on March 7, 1967, was for similar work at the United States Soldiers' Home, Washington, D.C. In both instances, during the course of performance, a dispute arose as to the painting requirements under the respective contracts. Plaintiff refused to paint the concrete ceilings. Despite the fact that the Painting Schedules did not include the ceilings in the category of "SURFACES NOT TO BE PAINTED", plaintiff interpreted "exposed concrete" in the Finish Schedules as meaning unpainted concrete. The government rejected this interpretation and ordered plaintiff in both contracts to paint the ceilings.

Timely appeals were filed and denied by the Board. Plaintiff then filed this case on October 20, 1971, consolidating the two contracts for purposes of this suit. Plaintiff contends that in light of the discrepancies between the Painting Schedules and the Finish Schedules, its interpretation (that the contract did not require that ceilings be painted) was reasonable. Plaintiff contends it is accordingly entitled to damages resulting from the government's decision that the ceilings had to be painted.

■ This court is not bound by the Board's interpretation of the contract provisions, since such is a matter of law which the court is free to answer independently of the Board's decision. International Telephone and Telegraph v. United States, 453 F.2d 1283, 1288, 197 Ct.Cl. 11, 20 (1972); HRH·Constr. Corp. v. United States, 428 F.2d 1267, 1271, 192 Ct.Cl. 912, 918 (1970); Paschen Contractors, Inc. v. United States, 418 F.2d 1360, 1361, 190 Ct.Cl. 177, 180 (1969).

■ This court continues to acknowledge the general rule that where ambiguous contract language could result in two or more reasonable interpretations the language will be construed against the author. Gorn Corp. v. United States, 424 F.2d 588, 592, 191 Ct.Cl. 560, 567 (1970); WPC Enterprises, Inc. v. United States, 323 F.2d 874, 876, 163 Ct.Cl. 1, 6 (1963); Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390, 418 (1947). However, where the ambiguity or discrepancy is patently obvious, the contractor is then obligated to consult the government's representative prior to bidding if he intends to rely upon his interpretation in the future. Space Corp. v. United States, 470 F.2d 536, 539, 200 Ct.Cl. ——, —— (1972); Allied Contractors, Inc. v. United States, 381 F.2d 995, 1000, 180 Ct.Cl. 1057, 1064 (1967); Beacon Constr. Co. v. United States, 314 F.2d 501, 504, 161 Ct.Cl. 1, 7 (1963).

In the instant case the admitted discrepancy involved Painting Schedules versus Finish Schedules. The Painting Schedules clearly listed certain parts of the construction jobs to be left *unpaint-*

1. Merando, Inc., 70–1 BCA ¶ 8311.

*ed.* Ceilings were not listed therein.[2] However, on the drawings, the Finish Schedules described the ceilings as "exposed concrete". Plaintiff contends that it was reasonable to assume that "exposed concrete" was the equivalent of unpainted concrete.

However, in HRH Constr. Corp. v. United States, *supra,* the contractor similarly argued that certain areas were not required to be painted under the terms of the contract. These included "exposed concrete ceilings in stairwells, exposed concrete ceiling in the rubbish vestibule, and exposed concrete masonry unit walls in the mechanical equipment room and the trash room". *Id.* 428 F.2d at 1269, 192 Ct.Cl. at 915. As in the instant case, the section of the Painting Schedule entitled "SURFACES NOT TO BE PAINTED" did *not* include the disputed surfaces. This court held that despite the potential discrepancy, the Finish Schedule did not change the language of the Painting Schedule. *See also* Champion, Inc., 69–2 BCA ¶ 7979, and Eslin Co., 68–1 BCA ¶ 6904.

■ Plaintiff is also barred from arguing that this was a subtle discrepancy not imposing a duty to inquire. This court in HRH Constr. Corp., *supra,* stated clearly that:

> [T]he absence from the Finish Schedule of directions to paint the disputed surfaces should have put plaintiff on notice as to the existence of a discrepancy between the Finish Schedule . . . and the painting schedule. Reading the contract as a whole, as one must, the omission was not obscure or subtle but "obvious".

*Id.,* 428 F.2d at 1272, 192 Ct.Cl. at 920.

Thus, the instant discrepancy is not subtle, but *obvious.* The only reasonable conduct for the contractor would have been an inquiry prior to submission of the bid. This the contractor did not do.

Finally, the issue of this case can be resolved by referring to the contract itself. Section 2 of Standard Form 23–A (which was part of this contract) clearly states:

> In case of differences between drawings and specifications, the specifications shall govern.

In the instant case, the Painting Schedules were clearly a part of the specifications, whereas the Finish Schedules were merely parts of the drawings. Thus, the section of the Painting Schedules which explicitly list those surfaces not be painted must govern. Plaintiff was therefore required to paint the concrete ceilings pursuant to the terms of the contracts.

In light of the above, we find that the Board's opinions withstand a Wunderlich Act review. Accordingly, the plaintiff's motion for summary judgment is denied; the defendant's cross motion for summary judgment is granted; and the petition is hereby dismissed.

2. The specifications in contract DACA 31–67–C–0055 read in pertinent part:
9 SURFACES NOT TO BE PAINTED: The following items will not require painting: walls of elevator shaft, acoustical treatment, aluminum, copper, prefinished paneling and concrete floors.
The specifications in contract DA–44–110–ENG—6020 read in pertinent part:

27–08. SURFACES NOT TO BE PAINTED:
The following listed items:
concrete floors;
aluminum;
copper;
acoustical tile;
sprinkler heads;
hardware except bolts on steel doors.