**ROBERT L. GUYLER COMPANY, on its Own Behalf and on Behalf of the McCarty Corporation**

v.

**The UNITED STATES.**

No. 51–77.

United States Court of Claims.

Feb. 21, 1979.

William D. Bryce, Austin, Tex., attorney of record, for plaintiff.

Edward J. Friedlander, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant. Lawrence S. Smith, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and KUNZIG, Judges.

PER CURIAM:

This case comes before the court on plaintiff's request, filed April 4, 1978, for review by the court of the recommended decision of Trial Judge Harry E. Wood, filed February 1, 1978, pursuant to Rule 166(c), on defendant's motion and plaintiff's cross-motion for summary judgment, having been submitted to the court on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby affirms and adopts the decision as the basis for its judgment in this case. It is, therefore, concluded as a matter of law that the Board's denial of plaintiff's claim to an equitable adjustment has not been shown to be arbitrary, capricious, unsupported by substantial evidence, or legally erroneous. Accordingly, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied and the petition is dismissed.

1. The action is brought on plaintiff's own behalf and on behalf of the McCarty Corporation, plaintiff's mechanical subcontractor on the contract in suit.

2. ASBCA No. 20278, 76-1 BCA ¶ 11,893. On reconsideration, the Board affirmed the denial. 76-2 BCA ¶ 12,061. The Board decision was limited to entitlement, the parties having stipulated that "the total damages are $83,000", and that, should the Board find entitlement, "it can remand [the case] for an equitable adjustment in the amount of $83,000."

## OPINION OF TRIAL JUDGE

WOOD, Trial Judge:

In this action, before the court for review under the standards of the Wunderlich Act, 41 U.S.C. §§ 321–22 (1970), plaintiff[1] contends that administrative denial[2] of an equitable adjustment for the cost of furnishing some 400 dishwashers in military housing units being renovated at Fort Bragg, North Carolina, is arbitrary, capricious, unsupported by substantial evidence, and erroneous as a matter of law.

Plaintiff's position is that under the *contra proferentem* doctrine,[3] as well as for a considerable number of other reasons, the administrative decisions here under review are defective under Wunderlich Act standards, and that plaintiff is accordingly entitled to judgment herein. Defendant contends that the said decisions are supported by substantial evidence and legally correct, and should, therefore, be upheld. For reasons to be stated, it is concluded that plaintiff is not entitled to recover.

### I

The facts found by the Board, or otherwise justified by the administrative record,[4] are as follows:

On March 22, 1974, defendant, acting through the U. S. Army Engineer District, Mobile, Alabama, issued Invitation for Bids DACA 21–74–B–0105 ("the IFB") for "FY–74 Family Housing Improvements" at Fort Bragg, North Carolina. The original date set for bid opening does not appear in the administrative record,[5] but by an amend-

3. See, *e. g., George Hyman Constr. Co. v. United States,* 215 Ct.Cl. 70, 564 F.2d 939 (1977); *James A. Mann, Inc. v. United States,* 535 F.2d 51, 61, 210 Ct.Cl. 104, 122–23 (1976).

4. See *Merritt-Chapman & Scott Corp. v. United States,* 528 F.2d 1392, 1398, 208 Ct.Cl. 639, 651 (1976); *Arundel Corp. v. United States,* 515 F.2d 1116, 1118 n. 3, 207 Ct.Ct. 84, 89 n. 3 (1975).

5. An exhibit to defendant's brief (not in the administrative record) indicates an original bid opening date of April 25, 1974.

ment to the IFB a bid opening date of May 23, 1974, was ultimately established.

As originally promulgated, IFB Special Provision 30, "IDENTIFICATION OF GOVERNMENT FURNISHED PROPERTY (1968 SEP)", provided that the government would furnish to the contractor, for incorporation or installation in the work or use in its performance, 540 dishwashers. The Fort Bragg family housing units to be renovated included 400 Wherry Housing Units and 140 Capehart Housing Units, and installation of a dishwasher in each such unit apparently was contemplated.[6]

Section 11A of the specifications attached to the IFB was captioned "DISHWASHERS AND FUTURE DISPOSERS", and provided in part as follows:

1. *SCOPE OF WORK:*

(A) WORK INCLUDED: This section includes the installation of Government furnished dishwashers * * *

(B) RELATED WORK NOT INCLUDED IN THIS SECTION: The following items of related work are not included in this section:

\* \* \* \* \* \*

(2) Plumbing work, including installing dishwashers and water, waste, and vent piping and connections to them.

\* \* \* \* \* \*

3. *INSTALLATION:*

(A) GENERAL: Dishwashers shall be installed in accordance with requirements of Section 15A, PLUMBING; Section 16A, ELECTRICAL INTERIOR; and Section 10C, KITCHEN CABINETS AND EQUIPMENT.

As originally promulgated, Section 15A, "PLUMBING", contained the following provisions:

1. *SCOPE OF WORK:*

(A) WORK INCLUDED: This section includes the plumbing system complete within all buildings and connection to sewer and water services at a point not to exceed 5 feet outside of building walls.

(B) RELATED WORK NOT INCLUDED IN THIS SECTION: The following items of related work are not included in this section:

(1) Furnishing garbage disposers and dishwashers.

\* \* \* \* \* \*

10. *FIXTURES AND FIXTURE TRIM:*

\* \* \* \* \* \*

(D) FIXTURES:

\* \* \* \* \* \*

(4) Item P–(4), Kitchen sink, stainless steel, flat rim, double compartment, 32 inches by 21 inches by 5¼ inches deep.
\* \* \*[7]

By Amendment 0002, bearing an "effective date" of May 3, 1974, defendant modified the IFB in a number of particulars. Among other things, both Special Provision 30 ("IDENTIFICATION OF GOVERNMENT FURNISHED PROPERTY (1968 SEP)") and Section 11A "DISHWASHERS AND FUTURE DISPOSERS" were omitted. Amendment 0002 did not modify the "SCOPE OF WORK" clause of Section 15A "PLUMBING", with the result that Section 15A 1(B) continued to provide that "Furnishing garbage disposers and dishwashers" was "RELATED WORK NOT INCLUDED IN THIS SECTION". Section 15A 10(D)4, listing and describing a kitchen sink, was, however, modified by the following addition:

(a) Special requirement: Kitchen sinks for all dwelling units *shall have special*

---

**6.** The administrative record contains neither a complete copy of plaintiff's contract nor a complete copy of the original IFB. A revised IFB description of work suggests that new dishwashers were to be installed only in the 400 Wherry Housing Units, and the fact is that plaintiff's complaint to the Board was limited to 400, rather than 540, dishwashers. In briefs in this court, both parties refer to improvements to 540 housing units. The Board decision, however, referred to improvements to 400 housing units. These (and other) discrepancies are unanswered by the record.

**7.** The kitchen sink, and other fixtures (a water closet, a lavatory, a bathtub, and a shower outfit) specified in Section 15A 10(D) were to be furnished by the contractor.

contractor furnished, "under the sink" type dishwashers. The kitchen sinks shall be double basin specially designed and recommended for use with undersink dishwashers. Refer to detail on plans. Special features shall include the following: * * *[8] [Emphasis supplied.]

Further, Section 15A 11, "INSTALLATION", was modified[9] by making paragraph I, "DISHWASHERS AND FUTURE GARBAGE DISPOSERS" read in pertinent part as follows:

Provide water, waste, and vent piping for, and make final connections for dishwashers which will be furnished by the Contractor as hereinbefore specified. [Emphasis supplied.]

Upon receipt of the IFB as originally promulgated, plaintiff solicited bids from various speciality subcontractors, and the McCarty Company ("McCarty") elected to bid on the mechanical portion of the contract work (which included plumbing). Both plaintiff and McCarty were experienced contractors and they had frequently worked together on renovation projects similar to that covered by the IFB.

Plaintiff's vice president and secretary, Mr. Walker, who prepared plaintiff's bid on the contract in suit, testified that, with respect to mechanical work, it was his practice to take the lowest responsible subcontractor bid price and insert it on his bid "recap" sheet. Mr. Walker did not read Section 15A as modified by Amendment 0002, but instead relied upon McCarty to go through the said amendment and discover any changes pertaining to mechanical work.

The Board found that Mr. McCarty, president and general manager of McCarty, who prepared the latter's bid on the mechanical portion of the contract work, did read Amendment 0002, including "the 'special requirement' paragraph in Amendment No. 2 which clearly described the 'under the sink' dishwasher as contractor furnished." The Board also found that while Mr. McCarty failed to recognize therefrom "an added requirement to furnish dishwashers * * *", Mr. McCarty was aware both that McCarty was required to furnish kitchen sinks and that "the sink was changed was especially designed for use with an 'under the sink' dishwasher." Those findings deserve finality here.

Thereafter, and apparently on June 14, 1974, defendant, acting through the Department of the Army, awarded to plaintiff a contract (DACA 21–74–C–0127) for improvements to housing units at Fort Bragg, North Carolina. The record does not indicate either the contract date or award price.[10] The record does show that on July 15, 1974, plaintiff entered into a subcontract with McCarty for performance, at a price of $1,088,860, of the mechanical work contemplated by the prime contract.

So far as the record shows, neither plaintiff nor McCarty raised any question concerning dishwashers prior to contract award. Five general contractors (including plaintiff) submitted bids on the contract in suit, and the Board found that one unsuccessful bidder (Community Building Corporation) "did not include an allowance for dishwashers on its bid." One or more of the other general contractors raised questions about the dishwashers, but the record does not reflect either which bidder (or bidders) raised the questions, what questions were so raised, or what, if any, response defendant made thereto. While one unsuccessful bidder did include an allowance for dishwashers in its bid, that allowance was based on the bidder's own interpretation of the contract specifications (as amended), and not on questions to defendant.

---

8. The "following" specified, among other things, the overall length and width of the sink, and the depth, length and width of its inside compartment.

9. The original IFB antecedent of Section 15A 11 (if any) is not in the administrative record.

10. An "Appeal Data Report" in the administrative record suggests that the contract was awarded by the U. S. Army Engineer District, Savannah, Georgia, at a price of $2,995,678. As the Board noted (with particular respect to the date of contract award), however, these matters are "not important to the decision and not in controversy."

On July 11, 1974, following award of the contract to plaintiff, but prior to the subcontract between plaintiff and McCarty, a pre-construction conference was held at Fort Bragg. At that conference, a representative of plaintiff stated that government-furnished dishwashers had been deleted by Amendment 0002, and asked "Is the Government planning to put back a dishwasher in the hole in the kitchen area or are occupants to put their own dishwasher in?" The minutes of the conference do not reflect an answer to that question. Mr. McCarty, who attended the said conference, testified that "There was quite a bit of discussion about it, and then I think this was supposed to be checked upon and they'd let us know."

Some time thereafter, and prior to September 25, 1974, plaintiff was informed by defendant that it was required to furnish dishwashers, and it in turn so notified McCarty. The latter supplied the dishwashers under protest, made claim (through plaintiff) to the contracting officer for an equitable adjustment therefor, and, on denial of that claim, timely appealed to the Board, with the result noted at the outset of this opinion.

## II

One of plaintiff's contentions is that the Board decision "contained various errors and misstatements of fact", and that, while plaintiff brought such errors and misstatements to the attention of the Board by motion for reconsideration, the Board "failed or refused to correct any of its factual errors * * *." In its briefs to this court, plaintiff has simply cited its motion for reconsideration, without specification of such alleged factual errors. This approach falls far short of supplying "the substantive particularity, supported by appropriate record references, necessary to overcome the finality that otherwise attaches to findings made by a Board whose decision is subject to Wunderlich Act review." *Wickham Contracting Co. v. United States,* 546 F.2d 395, 397, 212 Ct.Cl. 318, 322 (1976); see also *Jet Constr. Co. v. United States,* 531 F.2d 538, 540–41, 209 Ct.Cl. 200, 204 (1976).

"It is not the task of this court to research the administrative record in order to sustain such unsupported allegations." *LSi Service Corp. v. United States,* 422 F.2d 1334, 1335, 191 Ct.Cl. 185, 188 (1970). Nonetheless, on careful review of the complaints plaintiff made to the Board and the administrative record, it is concluded that such complaints are devoid of merit. The Board did not commit reversible error of its description of the purpose and effect of Amendment 0002. And, neither the Board's summarization of the testimony of one witness, nor its statement that if Mr. McCarty "failed to perceive the change to 'contractor-furnished' dishwashers he should have", has been shown to be defective in this Wunderlich Act review. *Wickham Contracting Co. v. United States, supra; LSi Service Corp. v. United States, supra.*

## III

Plaintiff contended administratively, and despite a contrary suggestion in its reply brief appears to assert here as well, a right to the benefit of the "general rule that where ambiguous contract language could result in two or more reasonable interpretations the language will be construed against the author." *Merando, Inc. v. United States,* 475 F.2d 598, 599, 201 Ct.Cl. 19, 21 (1973); see also *George Hyman Constr. Co. v. United States,* 215 Ct.Cl. 70, 80, 564 F.2d 939, 944 (1977). Stressing the "general rule for construing government contracts" and the language of Section 15A 1(B)(1), plaintiff says that defendant "ran the risk that bidders would not * * * include dishwashers in their bid", that plaintiff did not do so, and that defendant "must therefore pay for its own error."

Plaintiff also contends, however, that because of the absence of a dishwasher "specification" in the IFB (as amended) dishwashers were not contractually required; that even if the amended IFB did contain such a "specification" it "does not suffice" to require plaintiff to furnish dishwashers; that the amended IFB violates Section 2305(b),

Title 10, United States Code (1970); and that defendant "violated nine (9) provisions of the Armed Services Procurement Regulations in lieu of specifications"; and "eight (8) applicable rules of contract law", each sufficing to entitle plaintiff to judgment.[11]

The Board rejected plaintiff's claim of right to the benefit of the rule that "ambiguous contract terms should bear the interpretation reasonably understood by the party who did not draft them * * *", holding that plaintiff "could not reasonably rely on a pre-existing general statement that dishwashers were 'not included in this section' when after Amendment No. 2 they obviously were included there and nowhere else", that "the defect was obvious and observed by [plaintiff's] subcontractor, McCarty" and that "If McCarty failed to perceive the change to 'contractor-furnished' dishwashers he should have." ASBCA No. 20278, 76–1 BCA ¶ 11,893, at 57,004. The other contentions plaintiff raised administratively were, however, neither specifically noted nor explicitly resolved by the Board, either in its original decision or on reconsideration.

■ "This court is not bound by the Board's interpretation of the contract provisions, since such is a matter of law which the court is free to answer independently of the Board's decision." *Merando, Inc. v. United States, supra;* see also *Maxwell Dynamometer Co. v. United States,* 386 F.2d 855, 867, 181 Ct.Cl. 607, 626 (1967). In the process of reaching its own conclusions concerning proper contract meaning, however, the court must nonetheless accord finality to administrative factual findings where, as here, there is no showing that such findings are in any way arbitrary, capricious, or unsupported by substantial evidence. *Wickham Contracting Co. v. United States, supra; Dale Ingram, Inc. v. United States,* 475 F.2d 1177, 1188, 201 Ct.Cl. 56, 71 (1973).

After the issuance of Amendment 0002, there was a clear and obvious conflict between Section 15A 1(B)(1) and other portions of Section 15A as amended. Both prior to and after issuance of Amendment 0002, Section 15A 1(B)(1) stated that the furnishing of dishwashers was related work "not included in this section", but other contract provisions, as modified by Amendment 0002, stated plainly that the contractor *should* furnish dishwashers. On these facts there was a patent and glaring inconsistency in the contract papers. Moreover, plaintiff was, or at the very least should have been, aware of such inconsistency. See *S.O.G. of Arkansas v. United States,* 546 F.2d 367, 212 Ct.Cl. 125 (1976); *Wickham Contracting Co. v. United States, supra.*[12]

■ The doctrine that before submitting its bid a prospective government contractor should attempt to have defendant resolve any patent conflict in contract terms "is a major device of preventive hygiene; it is designed to avoid just such post-award disputes as this by encouraging contractors to seek clarification before anyone is legally bound." *S.O.G. of Arkansas v. United States, supra;* see also *Space Corp. v. United States,* 470 F.2d 536, 539, 200 Ct.Cl. 1, 6 (1972); *Beacon Constr. Co. v. United States,* 314 F.2d 501, 504, 161 Ct.Cl. 1, 6–7 (1963). In the circumstances of this case, plaintiff was under an affirmative obligation to inquire, but failed to do so; accordingly, it cannot rely on "the canon in government procurement that an ambiguous contract, where the ambiguity is not open or glaring, is read against the Government (if it is the author)." *S.O.G. of Arkansas v. United States, supra;* see also *George Hyman Constr. Co. v. United States, supra.*

■ A government "contractor who submits his bid without reading all of specifications does so at his peril. * * * in such

11. In fact, plaintiff's brief includes nine alleged violations of "rules of contract law".

12. The Board found that although plaintiff's subcontractor "failed to recognize an added requirement to furnish dishwashers * * *",

Mr. McCarty had in fact "read the 'special requirement' paragraph in Amendment No. 2 which clearly described the 'under the sink' dishwasher as contractor furnished." Those findings are wholly unchallenged here.

a case the contractor assumes the risk of complying with the specifications and cannot complain later on if he is required to perform the contract in accordance with such specifications * * *." *Dale Ingram, Inc. v. United States, supra,* 475 F.2d at 1184, 201 Ct.Cl. at 70. The decisions of the contracting officer and the Board that plaintiff was contractually required to furnish dishwashers, while not binding, were legally sound, and on the facts of this case plaintiff is "now barred from recovering on this demand." *Beacon Constr. Co. v. United States, supra.*

Plaintiff's several other arguments, not addressed by the Board, have been carefully considered. They do not require or justify any different result.

■ The assertion that there is no "specification" for dishwashers in the IFB (as modified by Amendment 0002), and that, therefore, dishwashers were not required, is specious. The contract documents, as amended, contained a clear statement of a requirement for contractor-furnished "under the sink" dishwashers. Defendant did not take the position that dishwashers the contractor intended to furnish did not meet contract specifications.[13] The situation was, rather, one in which plaintiff did not intend to furnish "under the sink" dishwashers at all, notwithstanding a clear contractual provision that it must do so. Having failed to make any inquiries of defendant respecting dishwashers, plaintiff may not now validly contend that an allegedly inadequate "specification" of the characteristics of such dishwashers relieved it of any obligation to comply with that provision. See *Dale Ingram, Inc. v. United States, supra.*

■ Plaintiff further argues that in consequence of Section 2305(b), Title 10, United States Code, providing in substance that an invitation for bids is "invalid and no award may be made" where the specifications in the invitation "do not carry the necessary descriptive language and attachments * * *", plaintiff is entitled to judgment. Section 2305(b) was designed and explicitly intended to preclude a contract award pursuant to an invitation for bids not permitting "full and free competition." All else aside, that statutory provision fails to provide any basis upon which a successful government contractor bidder may escape the adverse financial consequences of his failure to read and understand a clear contractual requirement. *Cf. United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

Plaintiff also contends that each of a number of alleged violations of Armed Services Procurement Regulations (ASPR §§ 1–1203.3, 1–1206.1(a) in two respects, 1–1206.2 in two respects, 1–1206.3, 18–107, 1–1206.4(b), and 2–101(i)),[14] "shows plaintiff to be entitled to summary judgment as a matter of law." These provisions need not be discussed in any detail. Most of the sections cited simply do not apply here, and no breach of any relevant provision of ASPR has been shown.

Finally, plaintiff asserts that defendant "violated eight (8) applicable rules of contract law", and that each such "violation" is "material" and entitled plaintiff to judgment.[15] Specifically, plaintiff says that it was misled to its detriment by the amended IFB; that, to prevent unjust enrichment of defendant, plaintiff should be relieved of its bidding "error"; that there was no "meeting of the minds * * * concerning dishwashers * * *"; that the contractual reference to dishwashers "is void for want of particularity"; that since defendant's "true intendment" could not be ascertained "from the four corners of the bid invitation", plaintiff was not required to furnish the dishwashers; that Section 15A contains "fatal irreconcilable and material conflict";

---

13. Had defendant so contended, a different issue would be presented, and a different result might well obtain.

14. Plaintiff's reference is apparently to ASPR § 2–101(a).

15. As noted heretofore, nine separate assertions in fact appear in plaintiff's brief.

that the dishwashers are "undescribed", and therefore not required; that "plaintiff is entitled to recover under the doctrine of estoppel by representation"; and that if plaintiff made a mistake in not including an amount for dishwashers in its bid, the said mistake "was occasioned by the government and the government is liable for the consequences."

 There is no merit to any of these arguments. No misleading by defendant has been shown, or appears. Requiring plaintiff to furnish what it contracted to furnish is not unjust enrichment. If there was a mistake as to contract requirements, it was plaintiff's, and furnishes no basis for relief. The contract reference to dishwashers is not void for want of particularity, especially where plaintiff declined to seek any further particularity when it should have done so. As held above, while Section 15A does contain a patent inconsistency, the contract papers clearly set forth a requirement for contractor-furnished "under the sink" dishwashers, and plaintiff may not validly complain here that the dishwashers are "undescribed". Finally, no factual predicate for any "estoppel by representation" exists, and no basis for holding defendant liable for the consequences of any bidding mistake by plaintiff appears.

## IV

In sum, the Board's denial of plaintiff's claim to an equitable adjustment has not been shown to be arbitrary, capricious, unsupported by substantial evidence, or legally erroneous. Accordingly, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the petition is dismissed.