**ENRICO ROMAN, INC.**

v.

**The UNITED STATES.**

No. 10–82C.

United States Claims Court.

March 21, 1983.

---

Joseph V. Restifo, Philadelphia, Pa., for plaintiff.

Sanda M. Kayden, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; Manuel B. Oasin, Philadelphia, Pa., Regional Counsel, Gen. Services Administration, of counsel.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

### OPINION

SETO, Judge:

This Government contract case is before the court on cross-motions for summary judgment regarding plaintiff's "direct access" action under the Contract Disputes Act of 1978 to recover costs allegedly incurred in excess of the contract amount.

For the reasons stated below the court grants defendant's motion for summary judgment and finds that plaintiff's claim for additional compensation should be denied.

### FACTS

General Services Administration ("GSA") published a Solicitation No. 3VRC–MG–80–S0024, its Invitation for Bids ("IFB"), on April 8, 1980. The IFB concerned a contract to remove an existing section of raised floor of approximately 3,621 square feet (in the Philadelphia Veterans Administration Data Processing Center) and replace it with a new raised floor.[1] The bid opening date was set for April 30, 1980.

Mr. Thomas Keon, a subcontractor for plaintiff, Enrico Roman, Inc. (hereinafter "Roman"), inspected the work site in preparation of the bid and determined that clarification was needed in regard to specific areas of the floor, namely the area under four cooling units and the closet walls. Pre-bid inspection revealed that the air conditioning units were permanently installed with soldered water pipes and that the closet walls were permanently bolted to the floor.

At the time of the work-site inspection while formulating plaintiff's bid, the subcontractor made an oral inquiry of Mr. Ernest Hunter, the GSA building manager, as to whether the air conditioning units and closet walls were to remain in place. Mr. Hunter received word from the head of the computer department that the computers were to remain functioning throughout the construction; the existing floor was to be removed only as far as possible; and the air conditioning units were not to be removed while the floor was replaced. This information was relayed to Mr. Keon, the subcontractor, by telephone.

Mr. Albino L. Roman, secretary for Roman, also inspected the work site and was aware that the four cooling units and several closet walls were permanently bolted to the floor. These items had not been indicated in the IFB or drawings, or in any amendments to the IFB.

Subsequent to the subcontractor's conversation with Mr. Hunter, the GSA building manager, an amendment to the IFB was published on April 29, 1980. As a result, the bid opening date was extended to May 12, 1980. This amendment covered minor changes to the scope of the work section of the IFB, but still did not render clear the ambiguity of whether the floor space was to be removed and replaced under the closet walls and four cooling units. Rather, it excepted just two small areas (the steps and handrail) from the approximate 3,621 square feet of floor to be installed.

---

1. The Veterans Center located at 500 Wissah-   ickon Avenue, Philadelphia, Pennsylvania.

Plaintiff's subsequent bid in the amount of $39,633 was accepted by the GSA contracting officer. Although afforded reasonable opportunity, plaintiff never submitted any request for clarification, either oral or written, to Mr. Michael C. Grieco, the person designated on the IFB and Standard Form 22 to receive all requests for clarification.

A pre-construction conference was held on July 3, 1980. At this time, plaintiff stated that its interpretation of the scope of its work did not cover the floor area under the cooling units and closet walls. Plaintiff then asserted that an additional compensation would be necessary to cover that work. By letter, Mr. Grieco, the Government's representative, informed plaintiff that its claim for additional compensation was denied. Plaintiff took exception to the letter, stating it would proceed under protest and requested a decision from the contracting officer.

On November 10, 1980, plaintiff requested a change order for additional work performed in the amount of $2,158.17. The contracting officer, Mr. Gerald M. Wood, issued a final decision denying plaintiff's additional claim, on January 9, 1981.

## DISCUSSION

In this case, there are conflicting interpretations presented by plaintiff and defendant of the specified area of floor to be replaced. According to plaintiff's contention, the areas under the four air conditioning units and the closet walls, were outside the scope of the contract. In reaching this conclusion, plaintiff relies on the absence of any notation of these areas on the drawing, which accompanied the IFB outlined dimensions of the floor area. Moreover, plaintiff adduces that confirmation from Mr. Ernest Hunter, the GSA building manager, supported plaintiff's interpretation of the scope of the contract.

Defendant, on the other hand, asserts that once plaintiff admitted the need for clarification of the contract regarding these disputed areas during its pre-bid inspection, a duty arose, at that time, to resolve these issues with Mr. Grieco (the Government agent designated on the IFB and Standard Form 22, to receive any requests for clarification).

Plaintiff's question concerning the disputed areas of floor [2] buttresses the fact that an ambiguity existed in the IFB and attached drawings, when compared with the actual work site.

This court can be guided by the opinion of the Court of Claims in *George E. Newsom v. United States,* 231 Ct.Cl. ——, 676 F.2d 647 (1982), wherein the court said:

> The analytical framework for cases like the instant one was set out authoritatively in *Mountain Home Contractors v. United States.* It mandated a two-step analysis. First, the court must ask whether the ambiguity was patent. This is not a simple yes-no proposition but involves placing the contractual language at a point along a spectrum. Is it *so* glaring as to raise a duty to inquire? Only if the court decides that the ambiguity was not patent does it reach the question whether a plaintiff's interpretation was reasonable. The existence of a patent ambiguity *in itself* raises the duty of inquiry, regardless of the reasonableness *vel non* of the contractors's interpretation.[3] (Emphasis in original.)

■ In accordance with the court's reasoning in the *Newsom* case, this court's first responsibility is to ascertain analytically whether *vel non* an ambiguity existed regarding the replacement of the floor area under the air conditioning units and the

**2.** Defendant's brief for summary judgment, Statement of Facts, to which plaintiff agreed.

**3.** *George E. Newsom v. United States,* 231 Ct.Cl. ——, ——, 676 F.2d 647, 649 (1982); *Mountain Home Contractors v. United States,* 192 Ct.Cl. 16, 425 F.2d 1260 (1970). *See, e.g., Highway Products, Inc. v. United States,* 208 Ct.Cl. 926, 530 F.2d 911 (1976); *Space Corp. v. United States,* 200 Ct.Cl. 1, 470 F.2d 536 (1972); *HRH Constr. Corp. v. United States,* 192 Ct.Cl. 912, 428 F.2d 1267 (1970); *Beacon Constr. Co. v. United States,* 161 Ct.Cl. 1, 314 F.2d 501 (1963).

closet walls. Second, the court must ascertain if the ambiguity was so patent and glaring, as to impose an affirmative duty on the part of plaintiff to seek clarification from the designated Government agent *before* submitting its bid.

Only if the court ascertains that a patent ambiguity does *not* exist, may it proceed to determine f plaintiff's interpretation of the contract terms is reasonable.

The foregoing analysis is ineluctable since the doctrine of patent ambiguity is an *exception* to the *contra proferentem*[4] rule which requires that the contractual language be construed against the drafting party.

Policy considerations for this exception to the *contra proferentem* rule consist of the need to protect bidders so that they are all bidding on the same material; to discourage contractors from taking advantage of the Government; and most of all, to prevent post-award litigation. In this case, the IFB and attached drawings did not indicate the presence of the air conditioning units and closet walls.

> The rule that a contractor, before bidding, should attempt to have the Government resolve a patent ambiguity in the contract's terms *is a major device of prevention hygiene; it is designed to avoid just such post-award disputes as this* by encouraging contractors to seek clarification before anyone is legally bound. [Emphasis supplied.]

*S.O.G. of Arkansas v. United States,* 212 Ct.Cl. 125, 131, 546 F.2d 367, 373 (1976); *see Robert L. Guyler v. United States,* 219 Ct.Cl. 403, 593 F.2d 406 (1979); *Sturm v. United States,* 190 Ct.Cl. 691, 421 F.2d 723 (1970).

Upon inspection of the work site, plaintiff noticed the presence of the questioned items and sought clarification from Mr. Hunter as to whether the floor, under these items, was included in the approximately 3,621 square feet to be replaced.

The court adduces that plaintiff's admitted need to inquire on these matters, reinforces the evidence of an ambiguity in the contractual terms. The removal of the air conditioning units and the closet walls involved a time extension of 48 days and additional cost of $2,158.17. Together, the above-combined facts indicate that the ambiguity was patent and, *a fortiori,* imposed an affirmative duty on plaintiff to seek clarification prior to submitting its bid.

Plaintiff was obligated by the IFB and Standard Form 22 to make inquiries for clarification to Mr. Grieco, the designated Government employee. Plaintiff's reliance on Mr. Hunter's (the GSA building manager) confirmation of its interpretation was unwarranted. Moreover, plaintiff admittedly relied on Mr. Keon's (the subcontractor) inquiry of Mr. Hunter, which is binding on plaintiff. This inquiry should have imparted to plaintiff the necessity to resolve the ambiguity in the contract with Mr. Grieco. Plaintiff, however, failed to fulfill its legal obligation to direct its inquiry to Mr. Grieco. *James A. Mann, Inc. v. United States,* 210 Ct.Cl. 104, 535 F.2d 51 (1976).

Furthermore, the Government is not bound by oral comments of unauthorized representatives, even though the representative is a Government employee. As the court so aptly stated in the *Max Drill* case:

> There is merit, as a general proposition, to defendant's contention that the Government will not be bound by unauthorized interpretation of its ordinary employees. It has long been held that a *subordinate Government employee cannot render contract interpretations binding on the parties. Commercial Metals Co. v. United States,* 176 Ct.Cl. 343, 350–51 (1966). A person negotiating with an officer or agent of the Government must inform himself regarding the authority of such an individual, since *an officer of the Government cannot bind the Government with respect to matters beyond the limit of his authority. Wilber Nat'l Bank v.*

---

4. *James A. Mann, Inc. v. United States,* 210 Ct.Cl. 104, 535 F.2d 51 (1976); *Hegeman-Harris & Co. v. United States,* 194 Ct.Cl. 574, 440 F.2d

1009 (1971); *Morrison-Knudsen Co. v. United States,* 192 Ct.Cl. 410, 427 F.2d 1181 (1970).

*United States,* 294 Ct.Cl. 120, 123–24 (1935); *Miami Metro Bldg. Corp. v. United States,* 180 Ct.Cl. 503, 514 (1967). [Emphasis supplied.]

*Max Drill, Inc. v. United States,* 192 Ct.Cl. 608, 624, 427 F.2d 1233, 1249 (1976).

Plaintiff erroneously formulated its bid on reliance of the clarification its subcontractor received from Mr. Hunter, a Government employee who was unauthorized to render contract clarifications. Plaintiff, also, mischaracterized the holding of the *Max Drill* case. The court did not hold that a contractor can rely on statements of any Government employee. The court, in that case, succinctly stated in the above-quoted material that a contractor must "inform himself" of the Government employee's authority. Such an admonition facilitates the purpose of the imposition of the duty to seek clarification prior to submission of a bid, namely, prevention of post-award litigation. Statements of an unauthorized Government employee have never provided the required imprimatur desired by plaintiff. At the very most, the statements of an unauthorized Government employee can only lend insight to the reasonable interpretation of a contract.

Moreover, the *Max Drill* case is distinguishable on its facts from the present case. In *Max Drill,* the contractor spoke to the Government engineer who had been designated the technical representative of the contracting officer. However, the contractor's estimator was not informed of that fact. That situation is factually different from the present situation between plaintiff and Mr. Hunter.

Finally, a determination by the court of plaintiff's contention that its interpretation of the contract is reasonable is precluded and unnecessary since plaintiff failed to fulfill its duty to direct all its pre-bid inquiries to Mr. Grieco, the designated Government representative, for clarification.

## CONCLUSION

For the reasons stated in the opinion, this court concludes that defendant is entitled to judgment as a matter of law. Therefore, defendant's motion for summary judgment is granted, and the complaint is to be dismissed.

IT IS SO ORDERED.