ANTHONY GRACE & SONS, INC.

v.

The UNITED STATES.

No. 133–61.

United States Court of Claims.

Nov. 13, 1970.

David Fromson, Garden City, N. Y., attorney of record, for plaintiff.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

PER CURIAM:*

This is a claim under a Capehart housing contract[1] wherein, because of an unresolved dispute with the Air Force and the Federal Housing Administration over applicable labor rates, the plaintiff contractor's letter of acceptability was canceled in 1959 for failure of the contractor to close and proceed with performance. Plaintiff demands return of its $25,000 deposit and reimbursement of its preparation expenses. In earlier proceedings the Armed Services Board of Contract Appeals dismissed for lack of timely filing the contractor's original appeal from the contracting officer's adverse decision. 60–2 BCA ¶2682, June 29, 1960. Thereafter, this court disagreed, holding the appeal to have been timely, and directed a trial before a Trial Commissioner of the court instead of remanding to the Board for a hearing. 345 F.2d 808, 170 Ct.Cl. 688 (1965). On certiorari, the Supreme Court reversed and directed this court to return the case to the Board for proceedings on the merits (384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966)), which was done by court order. 176 Ct. Cl. 1381 (1966). Following a hearing on the merits the Board denied the appeal except for a small item of claim for certain fees which was remanded to the contracting officer with instructions for disposition. 68–2 BCA ¶7228, August 30, 1968. The final Board action is now before the court for review under standards of the Wunderlich Act (41 U.S.C. §§ 321, 322) on plaintiff's application.

The issue framed by the Supreme Court in its decision, and therefore defining the duties of the Board and now this court, is expressed in these words:

\* \* \* The issue involved here is whether the Department of the Air Force was justified in cancelling respondent's commitments, retaining its deposit and itemizing certain damages. This raises questions concerning the propriety of respondent's failure to press forward to close the contract regardless of an outstanding wage dispute. And this, in turn, requires an analysis of the original bid invitation and accompanying specifications, the custom and usage of the trade, and the subsequent conduct of both parties to this dispute. Obviously there are factual issues to be resolved and that task is initially for the Board, not the Court. [United States v. Grace & Sons, *supra*, 384 U. S. 424, 432, 86 S.Ct. 1539.]

Addressing itself to these issues the Board decided that the contractor's "field investigation [of union custom and usage in the contract locale as to the minimum wage rates applicable to different parts of the contract in suit] was inadequate, mistaken, or misleading, and its conclusions based upon non-union custom and practice were inapplicable and erroneous.", that even if the contractor's interpretation of the contract

---

\* The court has been helped by the opinion filed by Trial Commissioner C. Murray Bernhardt. We reach the same result.

[1]. 42 U.S.C. §§ 1594–1594j; 12 U.S.C. §§ 1748–1748i. Procedures under the Capehart Act are summarized in Anthony P. Miller, Inc. v. United States, 161 Ct.Cl. 455, cert. denied, 375 U.S. 879, 84 S.Ct. 149, 11 L.Ed.2d 111 (1963).

provisions regarding the labor application dispute were correct its sole recourse under the bid package was to withdraw its bid and recover its $25,000 bid deposit and did not include the right as demanded to recover its out-of-pocket bid preparation expenses, and, thus, that the contractor's "willful failure to either exercise one of its options or to close because of the wage dispute [after five extensions of the closing date] is held to be just cause for cancellation." Converting the Board's ruling to the terms of the Supreme Court's prescription, in essence the Board held that the Air Force was justified in canceling the contractor's commitments and in retaining its deposit because the contractor's failure to press forward to close the contract was improper in that it was primarily predicated upon its erroneous conclusion concerning the custom and usage of the trade with respect to the subject matter of the wage dispute.

■ The basic (and undisputed) facts as to this wage dispute are set forth in our earlier opinion on the timeliness of the administrative appeal, 345 F.2d at 813–818, 170 Ct.Cl. at 696–704, and need not be recounted again. As we there pointed out, plaintiff's position was that under the contract specifications and the pre-bid Labor Department wage determination the plaintiff was required to pay higher building construction rates, as determined by the Secretary of Labor, only for work to a point five feet outside the building foundation line, while for work beyond that line it had to pay the lower heavy and highway construction rates; that it had made its bid on this understanding; but that after its bid had been accepted and it had signed the letter of acceptability the Labor Department changed the wage determination so as to require plaintiff also to pay the higher building construction rates for all work beyond the five-foot point (except for work covering construction of streets and roads). Plaintiff's steadfast demand to the Air Force was that its bid price be increased by this difference in wages. The defendant has maintained all along that there was no operative difference in the two wage determinations and that, before bidding, plaintiff misread the specifications to permit it to pay the lower rate beyond the five-foot line.

There are two main ways in which to approach this controversy over the wage rates, and plaintiff cannot prevail through either route. One course is to assume *arguendo* that the specifications, read in the light of the original wage determination, were ambiguous on their very face.[2] If that is to be assumed, then it is also clear that this ambiguity was glaring, and likewise that it was in fact apparent to plaintiff before it bid. The Board found, on solid evidence, that plaintiff's representative, before he prepared plaintiff's bid, noticed the great disparity between the building construction and the heavy and highway wage rates in the original Labor Department determination, and that there was no clear indication of where either schedule applied. As the Board also (and allowably) found, the vast differential in the two wage scales, and the provision in the specifications concerning the five-foot line,[3] raised "two red flags" in the mind of the plaintiff's principal bidding agent, and he was unable to resolve the question of the application of the wage scales to the actual work on the basis of the bidding papers alone. It necessarily follows—if the papers are considered ambiguous on their face—that plaintiff should have taken the problem to the contracting officer for clarification.

2. The trial commissioner so held but both defendant and plaintiff deny that this was so. Since it is unnecessary to resolve this question, we need not and do not pass upon the issue.

3. This specification did not refer in terms to wages or wage rates. The Board found: "Upon the literal language of the specification and appellant's [plaintiff's] testimony concerning its meaning, we find that nothing therein expressly states where the two schedules of wage rates would apply, whether within or without the five-foot building line."

The bid invitation contained a clause expressly requiring this course if there was doubt as to the meaning of the specifications or a discrepancy or omission.[4] In Beacon Constr. Co. of Mass. v. United States, 314 F.2d 501, 161 Ct.Cl. 1 (1963), we enforced just such a provision, where, before it bid, the contractor became aware of the plain ambiguity. We held that if the bidder fails, in that pre-bid situation, to resort to the remedy proffered by the Government, a patent and glaring discrepancy, confusion, or omission should be taken against him in later interpreting the contract. We have applied the same rule to a wage-rate dispute comparable to the present one. Black, Raber-Kief & Associates v. United States, 357 F.2d 355, 174 Ct.Cl. 302 (1966). In that case a count of the petition was disallowed because, in the presence of an admitted ambiguity in the bid package relating to inchoate additions to the minimum wage determination by the Department of Labor under the Davis-Bacon Act, 40 U.S.C. § 276a, the plaintiff-bidder on a Capehart housing project failed to seek clarification of the ambiguity from the contracting officer, as the provision in the invitation required, before putting in its bid. There is no reason to change the rule for the present similar Capehart Act wage-dispute case, which has the same warning provision in the bid invitation.

The Board could properly reject, as it did, plaintiff's claim that its representative making the prebid investigation actually consulted the Department of Labor by telephone to interpret the latter's intention as to application of the dual labor rate determination, the wide rate variance in which, along with the specification's division of the work within and without a five-foot perimeter of each building foundation line, he testified raised a "red flag" in his mind. This witness' lack of memory as to who in the Department of Labor he consulted by telephone, the Department's unfamiliarity with the particular contract, and the procedures habitually followed by the Department in issuing minimum wage determinations, render the plaintiff's testimony as to consulting the Department too vague, unsupported and contradicted to warrant reliance, and any comforting assurance given by the Department along the lines described by plaintiff to be inherently improbable.

The second avenue for considering this case is to assume that the specifications and wage determination were not ambiguous or defective on their face, but rather that they could not accurately be applied without finding out the local custom as to the payment of building construction wages, on the one hand, and of heavy and highway wage rates, on the other. This was the path the Board took, and which the plaintiff itself followed before it bid.[5] Before it submitted its estimate, plaintiff did undertake to find out what was the custom and usage in Maine, where the project was to be built, but the Board found (again, on substantial evidence) that plaintiff's "field investigation was inadequate, mistaken, or misleading * * *." The trouble was that there was a difference

---

4. "The bidder should carefully examine the provisions of the form of Housing Contract attached hereto, including the Drawings and Specifications made a part thereof; visit the site of the housing projects; and fully inform himself as to all conditions and matters which can in any manner affect the financing of the construction and the construction of the housing projects or their cost. Should the bidder find *discrepancies in, or omissions from,* such Drawings and Specifications or other documents attached hereto, *or should he be in doubt as to their meaning,* he should at once notify the contracting officer, Otis Air Force Base, Massachusetts, and obtain clarification prior to submitting a bid. Information given will be transmitted to all known interested bidders." [Emphasis added.]

5. The Board found: "The area of application of each wage schedule, according to appellant's [plaintiff's] understanding, depended not upon a reading of the specifications or wage predeterminations themselves, but upon extraneous factors to be determined by each bidder after investigation."

in practice, as to these wage-rates, between union and nonunion contractors,[6] and though plaintiff was a union builder it failed to perceive this difference and erroneously calculated its bid on the non-union practice. Accordingly, "its conclusions based upon non-union custom and practice were inapplicable and erroneous." These findings are adequately supported by the evidence before the Board as to the wage practice in that area at the pertinent time. The corollary is that, if plaintiff had made a proper pre-bid inquiry, it would not have committed its mistake in computing labor costs. Thus, on the facts found administratively, the responsibility was entirely plaintiff's, not the Government's.

Under either of these theories—the first, that the original pre-bid documents were plainly ambiguous on their face; the second, that the documents were not in themselves ambiguous but called for an inquiry into local custom and usage—the second wage determination by the Labor Department cannot be considered a change in the requirements imposed on plaintiff, but was simply a clarification of the pre-existing requirement. The result is that the foundation of plaintiff's claim collapses and it cannot recover.[7] It is unnecessary therefore to consider the Board's alternative

holding that, even if there was a change in the requirements, plaintiff was not entitled under the contract to recoup its out-of-pocket expenses but had to content itself with one of two contractual options—which it consistently refused.

■ One last item remains. The Board remanded to the contracting officer plaintiff's claim for $4,329.50 which plaintiff had paid to the Federal Housing Administration in commitment examination and insurance fees, with instructions to refer the item to the Federal Housing Commissioner to release such funds to the contractor, unless earned or their retention under other law or regulation would be appropriate. A similar claim was dealt with in Terminal Constr. Co. v. United States, 171 Ct.Cl. 1, 8–9 (1965), and Heers v. United States, 357 F.2d 344, 165 Ct.Cl. 294 (1964), wherein the court held the contractors not entitled to return of such fees under pertinent FHA regulations because the return of said fees, even where the contractor's application for the insurance commitment is rejected, is discretionary; there had been no showing of abuse by the FHA Commissioner in retaining said fees; and plaintiffs' applications for mortgage insurance were not rejected but, on the contrary, insurance commitments were issued and amended, as they were here.[8] The same

6. The Board found: "In summary, we find from the evidence that the relevant custom and usage in the construction industry in Southern Maine during 1958–1959 depended upon whether a contractor was a union or a nonunion operator. For a union contractor, the existence or nonexistence of a five-foot building line in specifications had no significant bearing on the rate of wages. He would be required to pay the building construction rates for the employee classifications determined by the Secretary of Labor for a Capehart housing project, or the union scale if higher, regardless of a five-foot line, throughout the project up to the streets and roads. Within those confines, the effective area of application of the building construction rates does not derive from an interpretation of the contract specifications, but from union enforced custom and usage which ignores the specifications. To a union contractor, the nonunion local customs and trade usage on work area wage applicability would be academic and irrelevant." On the other hand, nonunion contractors did use the five-foot line to differentiate between building construction rates and those for heavy and highway construction.

7. Plaintiff has some subsidiary arguments which the Board dealt with adequately and which need not now be answered *in extenso*.

8. Attached to defendant's brief is a copy of a letter from FHA to the contracting officer, dated October 1, 1968, stating that the fees in question were considered as earned upon assignment of the application for processing, and that since the processing of plaintiff's application for insurance had been completed the fees theretofore paid to FHA would be retained.

reasoning applies here and the claim is without merit.

Plaintiff's motion for summary judgment is denied, the defendant's cross-motion allowed, and the petition is dismissed.