**SPACE CORPORATION**

.v.

**The UNITED STATES.**

No. 328–70.

United States Court of Claims.

Dec. 12, 1972.

James J. Freeman, Washington, D. C., attorney of record, for plaintiff; Lowell J. Bradford and Pierson, Ball & Dowd, Washington, D. C., of counsel.

Michael B. Rosenberg, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant; Steven J. Bercik, Elizabeth, N. J., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

In issue in this government contract case is whether Decision No. 10365 of the Armed Services Board of Contract Appeals (the Board) that a missing drawing created an *obvious omission* will withstand Wunderlich Act Review, 41 U.S.C. §§ 321, 322 (1970). Is the decision so arbitrary and unsupported by substantial evidence or is it so erroneous as a matter of law that it should be overturned?

We hold that Decision No. 10365 does warrant finality and that the Board's action is conclusive.

Plaintiff also seeks recovery on two alternative grounds which we hold to be equally without merit.

On July 31, 1962, the U. S. Army Ordnance Missile Command at Redstone Arsenal, Alabama (Redstone) forwarded to the St. Louis and other Ordnance Districts copies of Request for Quotations (RFQ) and two sets of drawings and specifications for the procurement of Pershing missile containers. The St. Louis District proceeded to assemble bid packages which would include the RFQ, a set of the drawings received from Redstone, engineering parts lists (EPL) which listed all necessary parts and parts generation lists (PGL) and specifications.

The bid packages were sent to prospective bidders, including the plaintiff, and were received on the 25th or 26th of August 1962. Upon receipt of the drawings, approximately 1,500 in number, plaintiff's chief estimator sought to organize the drawings into two groups— one showing parts to be purchased for which quotations were needed in the preparation of the bid, and one indicating those parts which could be fabricated internally. In the process the chief estimator became quickly aware that there was no drawing which was indicated on the EPL as drawing number 10608202 (Drawing 202) relating to a monitoring system. The chief estimator thereupon decided (and was supported by his superiors) on the basis of plaintiff's prior experience in manufacturing such containers for Hawk, Sergeant and Nike Hercules missiles, which progressively became more complex, that the

cost of the monitoring system would come to about $35.00 per unit. Plaintiff incorporated this figure in its bid.

Drawing 202, which plaintiff did not receive, was a Martin Corporation component drawing. Although it did not show the construction or functions of the monitoring system, it stated that Aerodyne Corporation was the original source.

On September 24, 1962, after the submission of plaintiff's bid, a negotiation meeting was held at which the parties reviewed the bid package and price aspects of plaintiff's bid. Plaintiff's representative at the meeting, its chief estimator, pointed out that some specifications and drawings were missing and, on request, gave as examples drawings which existed but which lacked detail. The government representatives relayed the examples to Redstone, which advised that all required detail was present and that plaintiff was required to furnish only to the extent of detail shown. Although the Board found that Drawing 202 was the only missing drawing which described a component part as such and the monitoring system was the only component about which plaintiff did not receive information in the bid package, the chief estimator did not refer to Drawing 202 or inquire about the monitoring system.

Due to a change in the contract from Redstone, plaintiff was given an opportunity to resubmit a higher bid, which it did, but still failed to make any mention that Drawing 202 was missing.

After being awarded the contract on November 23, 1962, plaintiff requested and received an additional set of drawings directly from Redstone. It was then that plaintiff for the first time saw Drawing 202. It immediately contacted Aerodyne Corporation, the original source of the monitoring system, and discovered that the per unit cost was $410.00 rather than the $35.00 estimate that had been included in its bid. Despite good faith efforts by the government, additional information was not available which would have enabled the plaintiff to construct the system at a cost of less than $410.00.

On or about February 1, 1963, plaintiff ordered the necessary number of monitoring systems from Aerodyne at $410.00 per unit and simultaneously advised the government that it would file a claim for reimbursement. The contracting officer rejected plaintiff's claim and this decision was affirmed by the Board.

Plaintiff seeks recovery on three alternative theories:

I The Board's decision is arbitrary and capricious and is thus not final;

II there was a mistake in the contract which merits reformation; and

III the government breached the contract by not supplying sufficient information.

I

To sustain plaintiff's principal position, it would be necessary for this court to find, contrary to the Board, that plaintiff acted reasonably in preparing its bid, knowing that the drawing was missing and not inquiring as to its contents. We find that the Board's conclusion is supported by substantial evidence and is not erroneous as a matter of law.

Assuming *arguendo* that the drawing was missing, it is difficult to see how anything short of an inquiry about the contents of Drawing No. 202, so as to ascertain the actual contract requirements, could be considered reasonable conduct. It is clear that when a contractor is faced with an obvious omission, inconsistency or discrepancy of significance, he is obligated to bring the situation to the government's attention if he intends subsequently to resolve the issue in his own favor. Anthony Grace & Sons, Inc. v. United States, 433 F.2d 766, 769, 193 Ct.Cl. 248, 254 (1970); Blount Bros. Constr. Co. v. United States, 346 F.2d 962, 972–973, 171 Ct.Cl. 478, 496 (1965); Beacon Constr. Co. v. United States, 314 F.2d 501, 504, 161

Ct.Cl. 1, 7 (1963); Jefferson Constr. Co. v. United States, 151 Ct.Cl. 75, 89–91 (1960).

In *Beacon* there was an article of the contract which made it clear that all discrepancies in the figures, drawings or specifications should be brought to the government's attention.[1] Such a contract clause was not present here. However, an obligation to seek clarification as to an *obvious omission* is inherent. Thus despite the absence of the *Beacon* clause, the plaintiff should be held to the *Beacon* requirement of inquiry. Blount Bros. Constr. Co. v. United States, *supra*, 346 F.2d at 972, 171 Ct.Cl. at 496.

 Plaintiff argues that this case does not fall under *Beacon* and similar cases because the missing drawing was not an obvious omission, but rather created an ambiguity in the contract agreement. Plaintiff would have us look to the ambiguity cases which do not impose the duty to inquire. While ambiguous contract provisions are construed against the author (Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390 (1947) ), and a contractor is not usually obligated to seek clarification of all interpretative problems, he must nevertheless inquire where the discrepancy, omission or conflict is obvious. Jefferson Constr. Co. v. United States, *supra*. There is sufficient evidence in this case to merit the conclusion that the plaintiff did in fact know that there was an omission in the RFQ and that it should have known that it was an omission of the type that required further inquiry.

The Board found that shortly after receiving the bid package and before a bid was submitted, the chief estimator for the plaintiff knew that Drawing No. 202 was missing. He decided (and was upheld by his superiors) on the basis of plaintiff's prior experience in manufacturing shipping containers for Hawk, Sergeant and Nike Hercules missiles to interject his own analysis of the system and submit a bid price without inquiring about this particular missing drawing.

Although not a novice in supplying missile containers, plaintiff had never worked with the Pershing missile as called for in this contract. The previous containers supplied had progressively become more complex. First, they monitored humidity; then, a temperature sensing device was added. Finally this instant contract called for a shock monitoring device. Thus when the specifications called for a monitoring system, plaintiff could not have reasonably known exactly what was required. All plaintiff had was a "glaring gap".

The evidence was also clear, as the Board held, that the monitoring system was not a "standard part" defined by reference to a well known military standard. The mere fact that Drawing No. 202 was in existence merits the conclusion that the government did not consider this a standard part with which the contractor would be familiar.

Plaintiff further argues that it believed that the monitoring system was a $35.00 item because of its prior experience with such devices and because of the position of the device towards the end of the EPL. We have seen above how the plaintiff's prior experience should have in fact alerted the plaintiff. Regarding the description of the system in the EPL, plaintiff contended before the Board that the EPL was arranged in Christmas Tree order, i. e. most important items first, thus allegedly lending strength to its argument that the monitoring system was an unimportant item and thus not an obvious omission. The government contended and the Board found that the order of the listing on the EPL represented the order of assem-

---

1. Article 2 of the Contract reads in part as follows: "In any case of discrepancy in the figures, drawings, or specifications, the matter shall be immediately submitted to the contracting officer, without whose decision said discrepacy shall not be adjusted by the contractor, save only at his own risk and expense."

bly, working from the interior to the exterior. Since the monitoring system was to be attached to the outside of the container, it appeared towards the end of the list. We feel that there was sufficient evidence to warrant this conclusion by the Board.

We find it difficult to give serious credence to plaintiff's final argument on Wunderlich Review. Plaintiff contends that the government ordered plaintiff at the September 24, 1962, meeting to bid on the documents as presented. The Board found otherwise. The meeting's agenda, prepared by the government, stated in part:

> (b) Does contractor understand and agree to all drawings and specifications?

> (1) *Are any drawings or specifications missing?* (Emphasis added.)

As a response to this item on the agenda, plaintiff's representative, the same man who realized that Drawing No. 202 was missing initially, commented only that some *details* were missing from certain drawings. Upon checking, the government representative said, with regard to the specific examples given it by the plaintiff, that the plaintiff should proceed with the bidding with the details that it had. But plaintiff had never even mentioned Drawing No. 202; thus we could not in good conscience construe the government's statement as meaning plaintiff should bid without Drawing No. 202.

## II

■ Plaintiff's second ground for recovery in the alternative is based upon the theory of reformation. Plaintiff argues that it misinterpreted the bid package due to the absence of Drawing No. 202 and is thus entitled to a reformation of the contract to reflect the original intentions of the parties. We find that the circumstances of this case do not warrant application of this equitable doctrine. As a general rule, the Court of Claims has jurisdiction to reform a government contract as an incident to the rendition of a money judgment. California-Pacific Utilities Co. v. United States, 194 Ct.Cl. 703, 715 (1971); however, the purpose of the remedy is to make a mistaken writing conform to antecedent expressions on which the parties agreed. Bromion, Inc. v. United States, 411 F.2d 1020, 1022, 188 Ct.Cl. 31, 35 (1969). Most frequently reformation is warranted when there is a clear-cut clerical or arithmetical error. This court is concerned to protect the contractor from a contracting officer who knows or should know that the contractor has made a mistake in his bid. Ruggiero v. United States, 420 F.2d 709, 713, 190 Ct.Cl. 327, 335 (1970). The record in this case does not support a finding that would merit equitable relief in the form of reformation of the contract.

The *Ruggiero* line of cases is primarily concerned with mistakes made by the bidder which subsequently work to his disadvantage. The mistake in this case was by the defendant and the plaintiff was well aware of it prior to the submission of its bid. Plaintiff may recover on the theory of reformation under such circumstances only if the defendant's representatives knew or should have known of the mistake at the time the bid was accepted. Wender Presses, Inc. v. United States, 343 F.2d 961, 962, 170 Ct.Cl. 483, 485 (1965).

The plaintiff here does not argue that the defendant actually knew of this mistake, but rather contends that the defendant should have known that the drawing was missing. The test for such imputed knowledge of mistakes in bids is whether under the facts and circumstances of the case, there were any factors which reasonably should have raised the presumption of error in the mind of the contracting officer. Chernick v. United States, 504, 372 F.2d 492, 496, 178 Ct.Cl. 498 (1967).

Up until December 1962, defendant had no reason to believe that the bid

package was missing Drawing No. 202. As in all negotiated bid contracts, there was a negotiation meeting at which time the contractor was expressly asked whether any drawings or specifications were missing or unclear and if so were they minor or major omissions. In response, plaintiff failed to mention Drawing No. 202. Thus it was a reasonable assumption on the part of the government to assume that the drawings were in proper order. Despite this, plaintiff would have us impose upon the government the duty of searching through each bid of each contract to assure that all parts were properly accounted for. This is certainly too great a burden. The duty, as discussed earlier in this opinion, is upon the contractor to call the government's attention to obvious omissions. It was the contractor, not the government, who was aware of the problem here and thus should be held to the greater duty.

Thus, although in proper circumstances this court will reform a contract, the instant situation does not merit such equitable relief.

### III

Finally plaintiff in its third ground for recovery, in the alternative, is seeking damages for defendant's failure to provide sufficient information in December 1962 regarding the function and operation of the monitoring system. Plaintiff contends that had defendant supplied this information, it would not have been forced to purchase the system from Aerodyne Corporation, but rather could have saved money by either constructing it internally or purchasing it elsewhere.

We recognize the implied duty of contracting parties not to hinder the performance of each other. Dale Constr. Co. v. United States, 168 Ct.Cl. 692, 700 (1964). Nevertheless, the plaintiff neglects to note that in this case the alleged hindrance by the government was only after the plaintiff had failed to bring the problem to the government's attention. If the plaintiff had notified the defendant about the missing drawing early in the contract negotiations, then the plaintiff would have been able to inquire from Aerodyne and either adjust its bid accordingly, or ask for additional information. The Board found that the government cooperated fully, but was simply unable to secure the requested data.

Plaintiff relies heavily on the case of Aerodex, Inc. v. United States, 417 F.2d 1361, 189 Ct.Cl. 344 (1969), which held that the contractor had reasonable grounds to expect that the government would know the information sought. The government in *Aerodex*, unlike the instant case, had been deeply involved with the research and development work of the disputed component. The Government was thus in a position to supply the requested information.

In the instant case, there is no evidence to support a finding that the government was involved in any way in the development of the monitoring system. The drawing which described the system gave the contractor as much information as the government had. Aerodyne Corporation was listed as the original source and unlike *Aerodex* there is no evidence to show that the government had additional information regarding the specifications.

In light of the foregoing, we find that the Board's decision in favor of the government in this case withstands a Wunderlich Act Review. We also find that the claim for reformation and the claim of breach of contract are equally without merit.

Accordingly the plaintiff's motion for summary judgment is denied and the defendant's cross motion for summary judgment is granted. The petition is hereby dismissed.