This Wunderlich Act[1] case comes to us on cross-motions for summary judgment. The sole issue is whether plaintiff, a joint venture consisting of two corporations, is entitled to an equitable adjustment for additional costs expended by its subcontractors to relocate an air-handling unit ( ahu). The Postal Service Board of Contract Appeals ( psbca or board) upheld the decision of the contracting officer that any increased costs must be borne by plaintiff. On plaintiffs motion for reconsideration, the psbca affirmed its earlier decision. Plaintiff timely appealed to this court. For the reasons stated below, we affirm the decision of the board.
On June 11, 1976, plaintiff was awarded contract No. 109450-76-0061 by the U. S. Postal Service.[2] The contract required plaintiff to construct a general mail facility ( gmf) and a vehicle maintenance facility ( vmf) in Albany, New York, for a fixed price of $10,685,000. The work was to be performed in accordance with the general provisions, specifications, schedules and drawings provided by defendant. The contract required plaintiff to furnish and install 19 ahus, one of which is the subject of the present controversy (referred to as "ahu V-2”). Actual procurement and installation of the ahus was to be performed by plaintiffs subcontractor, Campito Plumbing & Heating (Campito). Campito, in turn, employed a sheetmetal subcontractor, Lombardi Industries (Lombardi), to assume responsibility for the installation and attachment of connecting duct work to the ahus.
The section of the specifications which dealt with ahus stated that they shall have physical dimensions suitable to fit the allotted space and meet the performance requirements specified on the contract drawings. The applicable drawings specified that ahu V-2 was required to be *939 installed on a steel platform in the mezzanine of the vmf. The height of the platform was shown to be 2 feet 9 inches above the mezzanine floor slab. In installing the ahu on the platform, it was necessary that the coil of the unit be aligned with the door (shown in the drawings) for maintenance purposes.
The roof above the platform on which ahu V-2 was to be installed slopes from south to north and west to east. The height between the underside of the roof and the top of the platform is not specified, but the board concluded that this distance can be computed "without undue difficulty.” psbca No. 633 at 4 (November 14, 1980). Campito did not make this computation before submitting its bid for the subcontract, before ordering the units or receiving delivery of the ahus. Apparently Campito expected that the supplier of the ahus would check the drawings to ensure that all of the ahus would fit into the space provided.
Plaintiff made its initial ahu material submission in December 1976, and a revised submission in February 1977. On February 28, 1977, defendant approved the submission, which included ahu V-2. Not all of the units approved precisely met the performance and power requirements set out in the contract. The model for ahu V-2 supplied by plaintiff met or exceeded the performance requirements specified in the contract.
On March 31, 1977, plaintiff submitted a shop drawing which detailed the installation of ahu V-2. The unit as shown on this drawing could not be placed on the platform and fit in the allotted space. On April 13, 1977, defendant returned this drawing to plaintiff with the following notations: "Approved as Noted.” "Revise and resubmit for final approval before fabrication.” On October 3, 1977, plaintiff resubmitted the drawing with the height of the platform unchanged. Defendant placed the following notation on the revised drawing: "certain dimensions appear to be in error-coordination by Regan/Nager required.” Plaintiff made no further submissions of this drawing.
ahu V-2 was delivered to the construction site by August 1977. The unit was not installed on the platform because the vertical distance between the platform and the roof was insufficient to accommodate the unit. The method by which *940 the unit could be installed was the subject of many discussions between plaintiff and defendant. By a letter dated July 5, 1978, defendant proposed that the unit be set in inverted channels with shear pads between the bottom of the channels and the floor. Defendant’s architect/engineer (a/e), by a letter dated December 19,1978, directed plaintiff to install the unit as set forth in the recommendations of July 5, 1978, such work to be performed at no additional cost to defendant and no change in the contract completion date. The contracting officer on December 28,1978, directed plaintiff to complete the work as ordered by the a/e. Plaintiff, in a letter dated January 25, 1979, protested the contracting officer’s directions. The contracting officer, by a final decision dated February 16, 1979, affirmed the previous contracting officer’s decision of December 28,1978.
The relocation of ahu V-2 required Campito to expend additional money for inverted channels and shear pads, and Lombardi incurred additional costs due to the modification of duct work leading to the ahu.
Plaintiff appealed the contracting officer’s final decision to the psbca on March 7, 1979. The board found that the evidence did not support plaintiffs contention that it was defendant’s notations on the shop drawings which caused the clearance problems. The board stated that the ahu supplied by plaintiff would not have fit in the allotted space even if located as shown on plaintiffs drawings as originally submitted. The psbca concluded that the clearance problem was caused by the size of the ahu which plaintiff furnished. The board went on to state, "There is merit to [plaintiffs] position that the unit it furnished was the only one on the market which met or exceeded all of the performance requirements of the contract. Nonetheless, it also had a clear contractual obligation to furnish a unit which would fit into the allotted space.” psbca No. 633 at 12 (November 14, 1980). The board stated that the contract drawings contained sufficient information for a contractor to compute the space available "without undue effort,” and the plaintiff or its subcontractors should have made this computation before ordering the ahu. By providing a unit *941 which met the performance but not the space requirements, without consulting with defendant,[3] plaintiff deprived defendant of the opportunity to initiate appropriate action. The psbca concluded that plaintiff had assumed the risk of any increased costs, and therefore denied plaintiffs claim of entitlement to an equitable adjustment.
Plaintiff filed a motion for reconsideration of the November 14,1980 decision of the psbca. In a decision dated April 16, 1981, the board stated that its earlier decision "recognized a specification defect which made performance impossible.” psbca No. 633 at 2 (April 16, 1981). As to plaintiffs argument that the impossibility of performance was a "latent” defect, the board stated that it had not addressed this issue since it was not dispositive. The board emphasized its earlier determination that it was not reasonable for plaintiff to order a unit without computing the space available. If plaintiff had done so, the defect would have been discovered, and once having discovered the defect, plaintiff had an obligation to notify defendant before proceeding. The board concluded,
When [plaintiff] elected to proceed without notifying the Postal Service of the specification defect, thereby depriving the Postal Service of the right to determine the corrective action to be taken, [plaintiff] assumed the risk of any increased costs, [psbca No. 633 at 3 (April 16, 1981).]
The psbca therefore affirmed its earlier decision.
Plaintiff filed its petition in this court on March 11,1981. Plaintiff advances six arguments[4] in support of its position that it is entitled to an equitable adjustment for the *942 increased costs associated with the relocation and installation of ahu V-2: (1) since none of the ahus available could meet both the space and performance specifications, Campi-to’s use of the smallest unit which met the performance specifications was reasonable; (2) since none of the units met all of the specifications, it is unlawful to hold plaintiff responsible for noncompliance; (3) a contractor can recover additional costs as a result of deficient specifications; (4) a contractor only has a duty to inform the contracting officer of defects in specifications when such defects are patent; (5) even if plaintiff had a duty to inform defendant, its failure to do so resulted in no additional cost to defendant; and (6) where the government provides a design, as well as a performance, specification, it assumes full responsibility for any impossibility in meeting the requirements. Plaintiff requests that we enter a judgment in its favor for $13,615, plus interest and costs.
As an initial consideration, it is worth noting that this court’s standard of review in a Wunderlich Act case is limited to whether the board’s decision is fraudulent, arbitrary, capricious, so erroneous as to imply bad faith, or unsupported by substantial evidence. United States v. Carlo Bianchi & Co., 373 U.S. 709, 714 (1963); Koppers Co. v. United States, 186 Ct. Cl. 142, 147, 405 F.2d 554, 557 (1968). Also, a board’s findings are given a presumption of validity. As stated in Koppers, "Where two equally reasonable but contrary inferences might be drawn from the record, and each could be sustained as supported by substantial evidence, the one adopted by the Board shall be sustained.” 186 Ct. Cl. at 149, 405 F.2d at 558.
We do not find any of plaintiffs arguments sufficiently compelling to overturn the decision of the psbca. In the final analysis, it was simply not reasonable for plaintiff to order and take delivery of the ahu before determining that the unit would fit into the allotted space. The contract (and common sense) dictated that plaintiff supply an ahu which had "physical dimensions suitable to fit space allotted.” The fact that plaintiff provided the smallest unit which met or exceeded the performance specifications does not make plaintiffs failure to calculate the available space any more reasonable.
*943 We think that plaintiff makes too much of the board’s finding of "a specification defect which made performance impossible” — i.e., there was no unit on the market which would fit within the allotted space and meet all of the performance specifications. The board also found that the units which would have met the space requirement did not deviate greatly from the performance specifications. Furthermore, some of the other ahus supplied and approved did not meet all of the performance specifications. This is not to suggest that we accept defendant’s self-serving argument (raised before the board) that any of these smaller units would have been acceptable to defendant as a matter of course. Rather, these facts show that there were potential alternatives which could have been explored had plaintiff discovered the space limitations before ordering ahu V-2. These facts also demonstrate that it would not have been reasonable for plaintiff to assume, a fortiori, that defendant would choose to waive the space requirement rather than the performance specifications.
We agree with the board’s conclusion that by "furnishing a unit which met the performance characteristics but not the space requirements, without consultation with [defendant], [plaintiff] deprived [defendant] of the opportunity of initiating appropriate action and it, therefore, assumed the risk of any increased costs which might result.” psbca No. 633 at 12-13 (November 14, 1980). The general provisions of the contract (section 57(d)) stated that in case of a discrepancy in the specifications, "the matter shall be promptly submitted to the Contracting Officer * * *. Any adjustment by the Contractor without such a determination shall be at his own risk and expense.” (Emphasis added.) Plaintiff should have been aware of the discrepancy before ordering the ahu, and should have brought the matter to the government’s attention at that time if it intended subsequently to resolve the issue in its favor. Highway Products, Inc. v. United States, 208 Ct. Cl. 926, 941, 530 F.2d 911, 919 (1976); Space Corp. v. United States, 200 Ct. Cl. 1, 5, 470 F.2d 536, 538 (1972). Plaintiff was less than commonly diligent in ordering a unit without ensuring that the unit would meet the space requirement. Since plaintiff did not act in a *944 reasonable manner, plaintiff must pay the price of its own negligence.
Finally, plaintiffs argument that its failure to inform defendant of the defect did not result in any additional cost to defendant cannot be considered by this court, as no evidence was submitted to the board in support of this premise. Conrac Corp. v. United States, 214 Ct. Cl. 561, 573, 558 F.2d 994, 1000 (1977); William F. Klingensmith, Inc. v. United States, 205 Ct. Cl. 651, 665, 505 F.2d 1257, 1265-66 (1974). All other arguments raised by plaintiff, although not directly addressed in this order, have been considered and found to be without merit.
it is therefore ordered, upon consideration of the parties’ submissions, without oral argument, that the decision by the psbca is sustained. Plaintiffs motion for summary judgment is denied, and defendant’s cross-motion for summary judgment is granted. Plaintiffs petition is dismissed.

 41 U.S.C. §§ 321, 322 (1976).

 A more detailed statement of facts is contained in PSBCA No. 633 (November 14, 1980).

 The parties agree that there were four models of ahus on the market which would fit in the space available. None of these units met all of the performance requirements, although the board concluded, "the extent to which they deviated was not substantial.” psbca No. 633 at 10 (November 14, 1980).

 Plaintiff also advances two other arguments: (1) Campito had made computations, based on the original contract drawings, indicating that the unit would fit in the space available; and (2) the difficulty in calculating the vertical height makes it an "impermissible delegation” by the defendant of an engineering function. As to this first argument, the PSBCA specifically found, based on Mr. Campito’s own testimony, that Campito did not make this computation before submitting its bid, placing the order, or receiving delivery of the ahus. The board also found that the evidence did not support plaintiffs assertion that the ahu supplied would fit into the allotted space even if located on plaintiffs shop drawing as originally submitted. The second argument is clearly without merit, as plaintiff had an unambiguous contractual duty to furnish an ahu which fit in the available space. Presumably, plaintiff could have calculated the available space before ordering the unit, or, at the very least, requested that defendant supply the necessary information before proceeding.