EDWARD S. SMITH, Circuit Judge:
 

 In this Government contract case, appellant Collins International Sendee Company
 
 *813
 
 (CISCO) appeals from a judgment of the United States Claims Court, denying CISCO’S claim for additional compensation resulting from the Government’s failure to perform its disputed legal duty to clarify an ambiguity in its contract with CISCO. We affirm.
 

 Issues
 

 We address first the issue whether the Claims Court erred as a matter of law in holding that the United States Government (in this case, the Navy) owed contractor CISCO no legal duty to respond to CISCO’S requests for clarification of contract ambiguities concerning wage and job classifications. Secondly, we determine whether the lower court erred in not remanding the case to the Armed Services Board of Contract Appeals (ASBCA) for further fact-finding.
 

 Background
 

 We summarize here the factual background set forth at greater length in the opinion below.
 
 [1]
 
 The Navy awarded CISCO a fixed-price contract on April 25, 1973, for the operation and maintenance of field stations for the Naval Space Surveillance System. This contract was subject to the Service Contract Act of 1965
 
 [2]
 
 and contained a clause requiring the contractor to pay service employees minimum wages and fringe benefits in accordance with those determined by the Secretary of Labor, as specified in any attachment to the contract. When the Navy issued the invitation for bids on March 1, 1973, no such attachment appeared with the contract. By March 15, 1973, however, the Department of Labor (Labor) had drawn up the attachment and the Navy had distributed it to prospective bidders. The wage determination attachment prescribed minimum hourly wage rates for certain categories of service employees, but these categories bore only a loose correlation to those specified in the contract.
 

 Accordingly, in March and April 1973 CISCO contacted the appropriate Navy officials a total of three times, by telephone and telegram, to seek clarification of the Labor wage classifications for certain employees. The Navy did not provide the requested information. In March 1973 CISCO also contacted both regional and Washington, D.C., Labor officials to receive help on this matter and received none. CISCO therefore prepared and submitted its bid as best it could and was awarded the contract as stated above on April 25.
 

 During the summer of 1973 certain CISCO employees complained about the wages they were receiving, resulting in a Labor Department investigation. By May 1974 Labor determined that a number of CISCO’S employees had been paid wages lower than those prescribed for their classifications, and Labor requested the Navy contracting officer to withhold that amount from CISCO. Two years later, in May 1976, Labor made this determination final and CISCO entered into a consent order under which it paid this sum (approximately $127,000) to Labor for distribution to CISCO employees for unpaid back wages. None of the parties here contest the terms of that order.
 

 In August 1976 CISCO notified the Navy contracting officer that CISCO would claim additional costs resulting from the higher wages dictated by Labor. CISCO did so, the contracting officer rejected the claim, and on appeal ASBCA dismissed the matter as beyond its jurisdiction because it was essentially a dispute between CISCO and Labor. The Claims Court held that ASBCA erred regarding jurisdiction, since CISCO’S complaint was properly targeted at the Navy’s actions, or lack thereof, but that-as a matter of law the authority to make such wage determinations was vested in Labor, not the Navy. Hence the Claims Court held that there was nothing the Navy could do about the wage classification problem, and CISCO could not recover.
 

 
 *814
 
 OPINION
 

 1.
 
 The Duty To Clarify
 

 CISCO reiterates the well-known principle of Government contract law that the bidder bears an affirmative duty to seek clarification of any patent ambiguities in the bidding documents and that, once he has done so, the burden of clarification shifts to the contracting agency.
 
 [3]
 
 The Government counters that no ambiguities, patent or otherwise, existed in the contract when read with the attached wage classifications. The Claims Court held that, regardless of any ambiguities, the Navy was under no legal duty to clarify for CISCO the meaning of the wage determinations.
 

 We must examine closely, as did the Claims Court, the applicable provision of the Service Contract Act (act) which may, in this case, prevail over the duty to clarify that CISCO cites (regardless of whether the ambiguities were patent). That act, the principles of which the CISCO-Navy contract incorporated, provides in part as follows:
 
 [4]
 

 (a) Every contract * * * entered into by the United States * * * the principal purpose of which is to furnish services in the United States through the use of service employees, shall contain the following:
 

 (1) A provision specifying the minimum monetary wages to be paid the various classes of service employees in the performance of the contract or any subcontract thereunder,
 
 as determined by the Secretary
 
 [of Labor],
 
 or his authorized representative
 
 * * *. [Emphasis supplied.]
 

 The act continues by fixing responsibility for any violation of the above provision on the “party responsible therefor” and authorizing the federal contracting agency to withhold from payment due the contractor the amount owed the employees.
 
 [5]
 
 The same provision states that:
 

 On order of the Secretary
 
 [of Labor], any compensation which
 
 the head of the Federal agency or the Secretary
 
 [of Labor]
 
 has found to be due
 
 pursuant to this chapter shall be paid directly to the underpaid employees from any accrued payments withheld under this chapter. [Emphasis supplied.]
 

 Paragraph (b) of the same section then grants authority to “the Federal agency head or the Secretary [of Labor]” to carry out the above provisions, while the following section grants the Secretary of Labor authority to enforce the act, by means such as promulgating rules and regulations, issuing orders, holding hearings, and making decisions based on findings of fact.
 
 [6]
 
 We therefore draw from the language of the act itself an inconclusive picture of the role of the contracting agency vis-a-vis Labor. We
 
 can
 
 say that the act requires Labor to specify the minimum wages to be paid the various employee classes, but we
 
 cannot
 
 say that the contracting agency is a completely passive bystander, as the Government might wish us to believe, in the process.
 
 [7]
 

 Since the act itself does not define for us the relationship between Labor and the contracting agency as it has arisen here, we look at the next most important document, the contract, to which both CISCO and the Navy agreed. The contract contains a paragraph entitled “Compensation,” set forth in full in the opinion below, which: (1) requires the contractor to pay service employees according to the Labor attachment; (2) requires the contractor to classify employees who are to be employed under the contract but who are not listed in
 
 *815
 
 the attachment, “so as to provide a reasonable relationship between such [contract] classifications and those listed in the [Labor] attachment”; (3) requires the contractor to pay such employees wages and fringe benefits “as are determined by agreement of the interested parties,
 
 who shall be deemed to be the contracting agency, the Contractor, and the employees
 
 [emphasis supplied]”; (4) requires the contracting officer, in the case of a dispute over classification, to “submit the question, together with his recommendation, to the * * * Department of Labor * * * for final determination”; and, most importantly, (5) states that “[fjailure to pay such employees the compensation agreed upon by the interested parties
 
 or finally determined by the [Labor] Administrator
 
 or his authorized representative
 
 shall be a violation of this contract
 
 [emphasis supplied].”
 
 [8]
 

 The contract, while not explicitly resolving the question of who is to bear the burden of the higher wages here at issue, is clear that Labor has final authority to settle wage disputes and that failure to abide by such final decision is a violation of the contract. The contract also requires the contractor to bear the responsibility of classifying employees not covered in Labor’s attachment so as to provide a “reasonable relationship” to such attachment. On the other hand, the contract does not outline a passive role for the contracting agency in this area. The agency is an interested party which may be involved in a wage dispute.
 
 [9]
 

 Considering all of the above — in particular, the language of the statute and the terms of the contract — we are compelled to conclude, as did the Claims Court, that the Navy did not owe CISCO a legal duty to clarify the Labor employee classifications, despite CISCO’S efforts to obtain such clarification. The Navy did not possess the authority to do so; Labor did. If the Navy had taken a position on the classifications, it could later have been accused of misleading the contractor, as CISCO apparently did accuse the Navy because of one official’s brief comment, or the Navy could even have been held estopped from thrusting the burden of its incorrect classification back to the contractor.
 
 [10]
 
 While the contract document envisions the Navy as an interested party, presumably extending a helping hand to all involved, the reality is that that hand may quickly be bitten if a dispute occurs.
 

 Similarly, the contractor is placed in an equally difficult spot of having to second-guess bureaucratic minds when it cannot obtain a prompt, pre-bid clarification of Labor’s classifications. If the contractor guesses low and the employees successfully contest its classification, it will foot the bill, as CISCO has. If it guesses high while a competitor guesses low, it will lose the contract. In short, application of this peculiar statutory scheme results in the business person bearing the burden of the Government’s, and in particular Labor’s, imprecision. This is a legislative problem which Congress, not the courts, must address. Meanwhile, the Labor Department could alleviate the situation by responding promptly to contractors’ prebid requests, rather than waiting for the matter to go to litigation, and the contracting agency could as well press Labor for such clarification, preferably prior to issuing the invitations for bids. Ultimately it is the resources of all interested parties, including those of the Government, which are drained in prolonging and fostering these types of confusion and disputes.
 

 
 *816
 
 We affirm the Claims Court’s holding that the Navy owed CISCO no legal duty to clarify, the employee classifications, because Congress has vested in Labor the final authority to make such determinations.
 

 2.
 
 Request for Remand
 

 CISCO contends that the lower court erred in not remanding the case to ASBCA for further fact-finding, since ASBCA improperly dismissed the case for lack of jurisdiction and never reached the merits of the case. The Claims Court is not empowered, CISCO states, to make
 
 de novo
 
 findings of fact in a pre-Contract Disputes Act, Wunderlich Act review case.
 
 [11]
 

 While the Claims Court may make findings of fact in this type of case where the evidence on the record is uncontroverted or undisputed,
 
 [12]
 
 no such findings were necessary here. The lower court came to a conclusion of law concerning the Navy’s duty to clarify based on the uncontroverted record at hand. That conclusion could have been made, in fact, if the record had included nothing more than the contract document. CISCO points to no finding of fact which the lower court wrongly made, and points only to the fact that the lower court failed to note the fact that CISCO had sought clarification from Labor as well as from the Navy.
 

 The refusal of the Claims Court to remand is affirmed.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Collins Int'l Serv. Co. v. United States,
 
 No. 277-82C, slip op. (Cl.Ct. Sept. 20, 1983) (unpublished).
 

 [2]
 

 . 41 U.S.C. §§ 351-358 (1976).
 

 [3]
 

 .
 
 See, e.g., Newsom v. United States,
 
 230 Ct.Cl. 301, 676 F.2d 647 (1982).
 

 [4]
 

 . 41 U.S.C. § 351 (1976).
 

 [5]
 

 .
 
 Id.
 
 § 352(a).
 

 [6]
 

 .
 
 Id.
 
 § 353. These decisions are conclusive upon all agencies of the United States and, if supported by a preponderance of the evidence, conclusive in any court of the United States.
 
 Id.
 
 §§ 353(a) and 39.
 

 [7]
 

 . We have also examined the legislative history of the act but are not further enlightened.
 
 See
 
 1965 U.S.CODE CONG. & AD.NEWS 3737
 
 etseq.
 

 [8]
 

 . This paragraph is required to be included in such federal service contracts under then-applicable Labor regulations. 29 C.F.R. § 4.6 (1973).
 

 [9]
 

 . The applicable Labor regulations also require the contracting agency to send the appropriate Labor officials a standard form, "Notice of Award of Contract,” detailing the terms of the service contract and the services which the employees are to perform.
 
 Id.
 
 § 4.8. We note as well that the record reflects that the Navy did contact Labor after receiving CISCO’S clarification requests, but that Labor informed the Navy that the Navy had no responsibility or authority to give the contractor additional classification assistance.
 

 [10]
 

 .
 
 Cf. Broad Ave. Laundry & Tailoring v. United States,
 
 681 F.2d 746 (Ct.Cl.1982).
 

 [11]
 

 . These acts are found at 41 U.S.C. §§ 601
 
 et seq.
 
 (Contract Disputes Act) and 321
 
 et seq.
 
 (Wunderlich Act) (1982).
 

 [12]
 

 .
 
 Ordnance Research, Inc. v. United States,
 
 221 Ct.Cl. 641, 609 F.2d 462, 465 (1979).