Tay ASHFORD, d/b/a Ashco General Services, Inc., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–473 C.

United States Court of Federal Claims.

Dec. 3, 1997.

Reissued for Publication on Feb. 23, 1999.

Charles W. Ellis, Oklahoma City, Oklahoma, for plaintiff.

Steven E. Gordon, with whom were Assistant Attorney General Frank Hunger, Director David M. Cohen, Assistant Director Anthony H. Anikeeff, Department of Justice, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

Plaintiff, Tay Ashford, doing business as Ashco General Services, Inc. (Ashco), was awarded a competitively bid contract calling

for the furnishing of custodial services to the United States Army at Fort Sill, Oklahoma. In the performance of this work, the Army required Ashco to adhere to wage rates set forth in a collective bargaining agreement that was incorporated into the contract. These rates, being higher than those upon which Ashco had based its bid, imposed an economic hardship on Ashco that eventually forced it to abandon the work. As a result, the Government terminated the contract for default.

Following termination, Ashco submitted a claim to the contracting officer seeking relief from the default determination and an equitable adjustment in contract price to cover the unanticipated increase in labor costs that it had been obliged to absorb. Ashco based its claim for relief on the contention that the collective bargaining agreement adopted in the contract—and whose pay scale Ashco had been required to honor—was, in fact, a legal nullity; *i.e.*, it was an agreement that had been abandoned by the originating parties prior to its incorporation into the contract by the Government. Hence, the Government's enforcement of that agreement, Ashco contended, amounted to the imposition of an extra-contractual obligation. Ashco's claim was rejected by the contracting officer. This suit followed. The case is now before the court on defendant's motion to dismiss and plaintiff's opposition thereto. Oral argument was heard on November 20, 1997. We decide in defendant's favor.

## FACTS

On February 21, 1992, the United States Army issued an invitation for bids (IFB) for a contract to provide custodial services at Fort Sill, Oklahoma. Section H of the IFB, titled "Special Contract Provisions," notified bidders that the contract was subject to the provisions of the Service Contract Act of 1965 (the Act) and included, as a requirement of that Act, a wage determination by the Department of Labor (DOL) specifying the minimum wages that the contractor would be obliged to pay its employees.[1] The wage determination set forth in the solicitation adopted as its governing standard the wage rates prevailing in the neighboring counties of the locality involved.

On March 13, 1992, the Army issued an amendment to the solicitation. Amendment 0001 deleted the initial wage determination "in its entirety" and, in its place, substituted a wage determination that directed payment of "wage rates and fringe benefits set forth in the current collective bargaining agreement(s)" between A.M.E., Inc. (the predecessor contractor) and Local 100, SEIU (Service Employees International Union) AFL–CIO. The amendment specifically directed that the collective bargaining agreement be "incorporated in and made a part of this solicitation and any resulting contract."

On March 16, 1992, plaintiff acknowledged receipt of Amendment 0001. Despite this acknowledgment, however, plaintiff thereafter submitted a bid whose pricing was premised on the prevailing local wage rates rather than on the wage rates listed in the collective bargaining agreement. Upon evaluation of all bids, Ashco was found to be the lowest responsible bidder and, after being requested to confirm its bid—which it did—it was awarded the contract on March 25, 1992. Performance under the contract began on April 1, 1992.

Following the commencement of performance, plaintiff contacted the contracting officer, Ms. Larissa Hall, to inquire about the current status of the collective bargaining agreement and, in particular, to ask about Ashco's obligation to pay its employees at the higher hourly rates called for by that agreement. According to plaintiff, those rates were "nearly 33% higher than the wages and benefits for surrounding federal installations where similar services are provided." Plaintiff was advised that the wage rates specified in the collective bargaining agreement were

---

1. The Service Contract Act, as amended, 41 U.S.C. §§ 351–358 (1994) requires, *inter alia*, that government contracts in excess of $2,500 include a provision "specifying the minimum monetary wage to be paid [to] . . . service employees in the performance of the contract . . . in accordance with prevailing rates for such employees in the locality, or, where a collective-bargaining agreement covers such service employees, in accordance with the rates for such employees provided for in such agreement." 41 U.S.C. § 351(a)(1).

controlling and that Ashco was therefore obligated to adhere to those rates. Plaintiff did so.

In January 1993, Mr. Leslie Imboden, a field officer of the National Labor Relations Board (NLRB or Board), informed plaintiff that, in January 1991 (more than a year prior to contract award), A.M.E. (the predecessor contractor) had severed its relationship with the local union and had canceled the collective bargaining agreement. Mr. Imboden explained that a former A.M.E. employee had filed a grievance with the Board in late 1990, alleging that the SEIU and A.M.E. had violated the National Labor Relations Act by, among other things, entering into a collective bargaining agreement without the approval of an uncoerced majority of A.M.E.'s employees. The parties settled this dispute voluntarily—the former employee withdrew his challenge and the company, in turn, withdrew its recognition of the union and terminated the collective bargaining agreement. However, neither the Army nor the DOL were advised of this "non-Board" settlement.

On January 22, 1993, plaintiff contacted the DOL, requesting that agency to cancel the wage determination adopting the collective bargaining agreement and, in its place, to establish a new wage determination based upon the prevailing wages in the locality. Upon consideration, the DOL issued a revised wage determination on May 24, 1994. This revised wage determination, which adopted the prevailing wage rates, became part of plaintiff's contract for the September 1994 through September 1995 option period.

## DISCUSSION

The thrust of the claim put forward here is that the contract, properly read, sanctioned payment of the prevailing wage rates right from the start. The argument focuses on that portion of the text of Amendment 0001 which sets forth the revised wage determination. The language reads as follows:

> In accordance with Sections 2(a) and 4(c) of the Service Contract Act, as amended [41 U.S.C. §§ 351(a) and 353(c) ], employees employed by the contractor in performing janitorial services *and covered by the collective bargaining agreement(s) between A.M.E. Inc. and Local 100,* SEIU, AFL–CIO are to be paid wage rates and fringe benefits set forth in the current collective bargaining agreement(s). [Underscoring added].

Referring to the underscored words (in the above-quoted text), plaintiff contends that those words do not prescribe a wage determination for all of Ashco's janitorial service employees. Rather, asserts plaintiff, those words reach only those employees "covered by the collective bargaining agreement(s)." Thus, as to employees not covered by the collective bargaining agreement—the entirety of plaintiff's work force—plaintiff maintains that contractually it was free to pay the non-union wage scale, that is, the prevailing wage rates. Hence, the Government's insistence upon payment according to the union wage scale, argues plaintiff, amounted to a constructive change in the contract for which additional compensation is now owing.

The argument is not persuasive. Granted, if one looks just to the words plaintiff focuses on, the wage determination could be read as being applicable only to contractor employees subject to the collective bargaining agreement between A.M.E. and Local 100 as opposed to being applicable to all contractor employees. The difficulty with this reading, however, is that the text goes on to identify the collective bargaining agreement as an undertaking still in force: covered contractor employees were to be paid wage rates and fringe benefits set forth "in the current collective bargaining agreement(s)." From the Government's point of view then, the wage determination was intended to be more than just an advisory to be applied or not as individual employee circumstances might dictate. Rather, the expectation was that, because the collective bargaining agreement was still in place, all of plaintiff's employees necessarily were subject to it. Hence, the wage rates set forth in the collective bargaining agreement would be controlling. The short of the matter therefore is that plaintiff could not reasonably have concluded that the wage determination had no intended application to Ashco's situation.

Plaintiff maintains, however, that because the applicability of the wage determination was premised on a set of facts that no longer existed, Ashco was therefore free to disregard the determination. We disagree. Two reasons dictate rejection of plaintiff's position. First, a contracting party is never free to disregard, or to fail to call attention to, mistakes of fact that can be seen to shape or influence the other party's understanding of the expected contract's essential terms and conditions. Restatement (Second) of Contracts § 161(b) (1981). Thus, if plaintiff knew at the time it acknowledged receipt of Amendment 0001 that the collective bargaining agreement was no longer in force, then it had an obligation to bring that fact to the Government's attention. Plaintiff was not free to recognize the mistake and, at the same time, supply its own correction.

Second, even if plaintiff did not see itself as being under a *duty* to correct the mistaken belief embodied in the wage determination, common sense should have led it to question the correctness of relying on the prevailing wage rates as the basis for its labor pricing given that the stated purpose of Amendment 0001 was to substitute the collective bargaining agreement wage rates for the prevailing wage rates. Surely, Ashco should have recognized the necessity of seeking clarification from the Government given the incongruity inherent in an interpretation that read Amendment 0001 as sanctioning use of the very wage rates that that Amendment was intended to replace.

Plaintiff endeavors to justify its use of the prevailing wage rates by arguing that the Federal Acquisition Regulations specifically acknowledge a contractor's right to supplement an existing wage determination in those instances where the determination does not, by its express terms, cover the particular employee positions at issue. Plaintiff refers us to 48 C.F.R. § 52.222–41(c)(2)(i) (1992) which provides in part as follows:

If a wage determination is attached to this contract, the Contractor shall classify any class of service employee which is not listed therein and which is to be employed under the contract (i.e., the work to be performed is not performed by any classification listed in the wage determination) so as to provide a reasonable relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed class of employees shall be paid the monetary wages and furnished the fringe benefits as are determined pursuant to the procedures in this paragraph (c). [i.e., as determined by the Department of Labor].

Plaintiff's reliance on the foregoing regulation is misplaced. As the quoted text makes clear, the concern of the regulation is with those situations where "the work to be performed is not performed by any classification listed in the wage determination." That is not the situation plaintiff faced: there were no position classifications missing from the wage determination. Moreover, the regulation does not substantiate plaintiff's basic contention that a contractor can fall back on prevailing wage rates whenever an existing wage determination fails to address all encountered conditions. To the contrary, any necessity for interpolation of wage rates is to be accomplished by and through the Department of Labor. *See* 48 C.F.R. § 52–222–41 221(c)(2)(ii), (iii).

In addition to the arguments thus far discussed, plaintiff also raises the contention that, under the Service Contract Act, a wage determination requiring adherence to labor rates specified in a collective bargaining agreement is authorized only when the affected employees are actually covered by such an agreement. Absent the existence of a bonafide collective bargaining agreement, argues plaintiff, a contractor may only be required to pay prevailing wage rates. Therefore, according to plaintiff, a contract provision that demands payment of wage rates specified in a collective bargaining agreement where no such agreement actually exists is a nullity which the contractor is free to ignore.

We disagree with plaintiff's argument. Plaintiff's contract incorporated both the Service Contract Act and its implementing regulations. One of those regulations, titled "Disputes Concerning Labor Standards," grants the Department of Labor the exclusive au-

thority to settle disputes arising out of labor standards. 29 C.F.R. § 4.6 (1992).[2]  Therefore, adherence to the specified disputes procedure is the only mechanism open to a contractor seeking to challenge the appropriateness of a particular wage determination. *See Emerald Maintenance, Inc. v. United States,* 925 F.2d 1425, 1428 (Fed.Cir.1991); *Collins Intern., Service Co. v. United States,* 744 F.2d 812, 815 (Fed.Cir.1984).  Plaintiff's claim focuses on the contract's required minimum wage rates—and as such falls squarely within the language of the regulation on labor standards disputes. *See Emerald Maintenance,* 925 F.2d at 1429.

As a final argument, plaintiff raises the contention that enforcement of the collective bargaining agreement called out in Amendment 0001 would thwart the purposes of the National Labor Relations Act, 29 U.S.C. §§ 151–169 (1994) by requiring adherence to an agreement that was void from its inception.

The argument is not valid.  Since union membership was not required of plaintiff's employees as a condition to their right to receive pay based on the union wage scale, no violation of national labor policy occurred. Simply put, enforcement of a wage scale set out in a collective bargaining agreement is not the equivalent of enforcement of a collective bargaining agreement itself.

### CONCLUSION

For the reasons stated in this opinion, defendant's motion to dismiss is granted. The Clerk is directed to enter judgment accordingly.

**2.** 29 C.F.R. § 4.6(r) states:
[d]isputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 4, 6, and 8.  Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.